ORIGINAL

RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR - 7 2017

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

David Andrew Nezbeda
Heidi Christine Nezbeda
1940 McLain Road NW
Acworth, GA 30101
770-833-3222
Davidnezbeda2@gmail.com
Heidinez1985@gmail.com

UNITED STATES DISTRICT COURT
FOR THE
ATLANTA DIVISION
NORTHERN DISTRICT

DAVID ANDREW NEZBEDA, HEIDI CHRISTINE
NEZBEDA,

          Plaintiffs,

vs.

LIC, ONAN, MCRORIE, LEONARD, BRICKEY,
OLES, ONEAL, ODANIELS, LOVELACE, WHITE,
LIVELY, MINICH, COLEMAN, MCKWEON,
BUCHANAN, NORTH POINT PSYCHOLOGY,
RJMW, INLINE CONSULTING, WHITE HEART
ASSOCIATES, COBB COUNTY GOVERNMENT,
COBB COUNTY POLICE DEPARTMENT, COBB
COUNTY SHERIFFS OFFICE, COBB COUNTY
CLERK OF COURTS, COBB COUNTY ADULT
DETENTION CENTER, JUDICIAL
QUALIFICATIONS COMMITTEE, COBB COUNTY
TAX ASSESSORS/COMMISSIONERS OFFICE,
ARTIMES GROUP, WESTSIDE ELEMENTARY

          Defendants

Case No.:

STATEMENT OF CLAIM

**1:17-CV-1261**

## COMPLAINT

Comes now, David Andrew Nezbeda and Heidi Christine Nezbeda, and avers the follow:

PARTIES

1.Liberty Mutual Insurance Corporation (LIC)

175 Berkeley ST

Boston, MA 02116

(617) 357-9500

     LIC was at all time party to this complaint. It is an insurance company operating out of MA, but

with clients around the county. They acted in bad faith at all times during this complaint. They continue to act in

fraudulent ways surrounding the resolution of the Plaintiff's home claim. They falsify documents. Their employees

lie to the police and interfere with investigations. Their employees break and enter into the insured's home. They

invaded Plaintiff's privacy on several occasions. They knowingly and maliciously, for their own financial gain, have

withheld proper and just payments to Plaintiffs at every opportunity.

STATEMENT OF CLAIM - 1

1          2. Gillian O'Nan, herself and in her official capacity as Guardian Ad Litem, appointed by Judge

2   Robert D. Leonard, II.

3          38 Old Ivy Road

4          Atlanta, Fulton County

5          Georgia, 30342

6          gillian@gonanfamilylaw.com

7          (404) 662-2240

8   Defendant, Gillian O'Nan Esquire, was at all times material to this Complaint and a lawyer who practices her

9   profession in the area of Cobb County, Georgia. Defendant O'Nan is licensed by the State Bar of Georgia., She

10   practices at O'Nan Family Law wherefore it is alleged that "under color of law", she personally participated in or

11   directed the alleged violations of Plaintiff's rights and that her specific conduct was the direct or proximate cause of

12   Plaintiff's injury and causes for relief.

13          3. Mark Edward McRorie

14          Insurance Adjuster

15          5062 Rodrick Trail

16          Marietta, Cobb County

17          Georgia, 30066

18          m.mcrorie@comcast.net

19          (919) 596-4414

20   Defendant, Mark Edward McRorie, was at all times material to this Complaint and an insurance appraiser who

21   practices his profession in the area of Cobb County, Georgia. Defendant McRorie is a USAA certified claims

22   adjuster. He practiced at RJMW and for himself wherefore it is alleged that he personally participated in or directed

23   the alleged violations of Plaintiff's rights and that his specific conduct was the direct or proximate cause of Plaintiff's

24   injury and causes for relief. Defendant extorted Plaintiff's through his personal friendship with Defendant Leonard.

25          4. Robert Dale Leonard, II, himself and in his official capacity as Superior Court Judge of Cobb

26   County, Georgia

27          70 Haynes Street

28          Marietta, Cobb County

29          Georgia, 30090

30          Robert.leonard@cobbco.org

31          (770) 528-1837

32

STATEMENT OF CLAIM - 2

Defendant, Robert D. Leonard, II, of Cobb County Superior Court, in and for Cobb County, Georgia, was at all times material to this Complaint. Leonard is sued individually and in his official capacity wherein it is alleged that he subjected and caused the depravation of Plaintiff's civil rights and privileges secured by the United States Constitution. Defendant has been in the spotlight before for such incredulous activities as seen on FOX5 Atlanta news story revealing more corruption involving Defendant Leonard, Defendant Leonard is currently in the media for his mishandling of the Rogers v. Brindle and his attacks made on the Defendant in that action, as well as Plaintiff D. Nezbeda in the Rogers v. Brindle action. Defendant Leonard has since recused himself from multiple cases for actions similar to the actions taken in Plaintiff's case before and after his recusal from the original matter. That he, having knowledge of the wrongs conspired to be done as alluded to in 42 USC § 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to do that which he by reasonable diligence could have prevented. Leonard is in violation of 18 USC § 1962(d); 18 USC § 1951 HOBBS ACT; 18 USC § 1959; 18 USC § 2(a); and 18 USC § 2(b). The Defendant was the direct or proximate cause of Plaintiff's injury and causes for relief.

       5. Melissa Brickey, as herself and in her official capacity as Staff Attorney for Judge Robert D. Leonard, II.

       70 Haynes Street

       Marietta, Cobb County

       Georgia, 30090

       Melissa.brickey@cobbco.org

       (770) 528-1839

Defendant, Melissa Brickey Esquire, was at all times material to this Complaint and a lawyer who practices her profession in the area of Cobb County, Georgia. Defendant Brickey is licensed by the State Bar of Georgia., She is staff attorney for Judge Robert D. Leonard, II wherefore it is alleged that "under color of law", she personally participated in or directed the alleged violations of Plaintiff's rights and that her specific conduct was the direct or proximate cause of Plaintiff's injury and causes for relief.

       6. Clay O'Daniel

       Attorney

       Roswell Building North

       8010 Roswell Road Suite #210

       Atlanta, Fulton County

       Georgia, 30350

       codaniel@odmclaw.com

1                    (404) 419- 6300

2  Defendant, Clay O'Daniel Esquire, was at all times material to this Complaint and a lawyer who practices his

3  profession in the area of Cobb County, Georgia. Defendant O'Daniel is licensed by the State Bar of Georgia., He

4  practices at O'Daniel MacDonald wherefore it is alleged that "under color of law", he personally participated in or

5  directed the alleged violations of Plaintiff's rights and that his specific conduct was the direct or proximate cause of

6  Plaintiff's injury and causes for relief. Defendant extorted Plaintiffs through his personal friendship with Defendant

7  Leonard.

8                    7. David Edward Oles, Sr.

9                    Attorney

10                   5755 North Point Parkway

11                   Suite #25

12                   Alpharetta, Georgia, 30022

13                   davidsr@deoleslaw.com

14                   davekolhes@msn.com

15                   (770) 648-0744

16  Defendant, David Edward Oles, Sr. Esquire, was at all times material to this Complaint and a lawyer who practices

17  his profession in the area of Cobb County, Georgia. Defendant Oles is licensed by the State Bar of Georgia., He

18  practices at The Law Offices of David E. Oles wherefore it is alleged that "under color of law", he personally

19  participated in or directed the alleged violations of Plaintiff's rights and that his specific conduct was the direct or

20  proximate cause of Plaintiff's injury and causes for relief. Defendant did not uphold his oath to protect the US

21  Constitution and the laws of the US and Georgia.

22                   8. Leslie O'Neal

23                   Attorney

24                   506 Roswell Street Northeast

25                   Suite #210

26                   Marietta, Cobb County

27                   Georgia, 30060

28                   ldo@odelloneal.com

29                   (770) 405-0164

30  Defendant, Leslie Dean O'Neal Esquire, was at all times material to this Complaint and a lawyer who practices her

31  profession in the area of Cobb County, Georgia. Defendant O'Neal is licensed by the State Bar of Georgia., She

32  practices at O'Dell and O'Neal wherefore it is alleged that "under color of law", she personally participated in or

STATEMENT OF CLAIM - 4

directed the alleged violations of Plaintiff's rights and that her specific conduct was the direct or proximate cause of

Plaintiff's injury and causes for relief.

9. Cobb County Government

100 Cherokee Street

Marietta, Cobb County

Georgia, 30090

(770) 528-1000

Defendant, Cobb County, was at all times material to this Complaint. Cobb County is sued in cause for its willful

participation in the deprivation of civil rights guaranteed by the Constitution of the United States wherein it is

alleged that "under color of law" proceedings of state courts were motivated by i) bad faith, ii) harassment, iii) and

deliberate and selective application and/or omission of state law that flagrantly and patently violated express

constitutional prohibitions. Defendant was the direct or proximate cause of Plaintiff's injury and causes for relief.

10. Dr. William Buchanan

Psychological Evaluator

3534 Old Milton Parkway

Alpharetta, Fulton County

Georgia, 30005

Doc4add@mindspring.com

(678) 624-0310 ext. 0

Defendant, Dr. William L. Buchanan, was at all times material to this Complaint and a psychologist who practices

his profession in the area of Cobb County, Georgia. Defendant Buchanan is a APA licensed psychologist. He

practices at North Pointe Psychology, wherefore it is alleged that he personally participated in or directed the alleged

violations of Plaintiff's rights while cloaked "under color of law" and that his specific conduct was the direct or

proximate cause of Plaintiff's injury and causes for relief. He is sued as an individual.

11. Jennifer Roberson Mckweon formerly Jennifer Roberson Nezbeda

114 Mountain View Rd.

Marietta, Cobb County

Georgia, 30064

(770) 508-0636

jennifernezbeda@gmail.com

Defendant, Jennifer Roberson McKweon, was at all times material to this Complaint and is the ex-wife of the

plaintiff. She lives in the area of Cobb County, Georgia. Defendant McKweon is the mother of the plaintiff's minor

STATEMENT OF CLAIM - 5

1  son. Defendant McKweon is sued individually as a "STATE ACTOR". She personally participated in or directed the

2  alleged violations of Plaintiff's rights while cloaked "under color of law" and that his specific conduct was the direct

3  or proximate cause of Plaintiff's injury and causes for relief.

4               12. Artimes Group, LLC

5               2453 Powder Springs RD SW

6               Marietta, GA 30064

7               1-800-492-9484

8  Defendant, Artime's Group, was at all times material to this Complaint. Artimes Groups is a multi service provider

9  specializing in drug testing, private detective services, and other services hustled to attorneys through sponsorship of

10  their special events. Defendant Artime's Group is sued individually as a "STATE ACTOR". Defendant Artime's

11  Group personally participated in or directed the alleged violations of Plaintiff's rights while cloaked "under color of

12  law" and that its specific conduct was the direct or proximate cause of Plaintiff's injury and causes for relief.

13  Defendant Artimes Group violated HIPPA laws in regards to Plaintiff D. Nezbeda's private health information.

14  Their employees provided false affidavits to other Defendants.

15               13. Reginald Lovelace

16               Claims Adjuster

17               1750 Beaver Ruin RD

18               Ste 100

19               Norcross, GA 30093-2808

20               (770) 595-8898

21  Defendant, Reginald Lovelace, was at all times material to this Complaint and a licensed claims adjuster for Liberty

22  Mutual Insurance Company. Defendant Lovelace is licensed by the State of Georgia, wherefore it is alleged that he

23  personally participated in or directed the alleged violations of Plaintiff's rights and that his specific conduct was the

24  direct or proximate cause of Plaintiff's injury and causes for relief.

25               14. Cobb County Police Department

26               140 North Marietta Pkwy

27               Marietta, GA 30060

28               770-499-3900

29  Defendant, Cobb County Police Department, was at all times material to this Complaint.  Defendant Cobb County

30  Police Department was made aware of the criminal activity being orchestrated through the Cobb County Courthouse

31  and by Liberty Mutual, but refused to stand to their fiduciary duty to the citizen Plaintiffs.

32               15. Cobb County Sheriff Department

STATEMENT OF CLAIM - 6

1    185 Roswell Street Nw

2    Marietta, GA 30090

3    (770) 499-4600

4    Defendant, Cobb County Sheriff Department, was at all times material to this Complaint. Defendant Cobb County

5    Sheriff's Department was party to the unlawful imprisonment of Plaintiff D. Nezbeda. Defendant was also a party to

6    the medical mistreatment suffered by Plaintiff D. Nezbeda while he was detained unconstitutionally at Defendant

7    Cobb County Adult Detention Center. Cobb County Sheriff's Department has also denied a FOIA request for Court

8    recordings with no legal reasoning for the denial.

9    16. Ellaretha Coleman aka Ellaretha Jones, Attorney

10    50 Hurt Plaza SE

11    Suite #824

12    Atlanta, GA 30303

13    (404) 476-7220

14    Defendant, Ellaretha Coleman, was at all times material to this Complaint and a lawyer who practices her profession

15    in the area of Cobb County, Georgia. Defendant Coleman is licensed by the State Bar of Georgia., She practices at

16    E. Jones and Associates. Defendant Coleman was a co-conspirator. Defendant Coleman used her prior knowledge of

17    Defendant Lively to gain access to the "Enterprise" and to gain her share of the illegally obtained funds that the

18    "enterprise" steals from victims as a matter of business.

19    17. JAMIE MINICH

20    PO BOX 1053

21    Montgomeryville, PA 18936-1053

22    (770) 715-2240

23    Large loss quality assurance specialist

24    Defendant, Jamie Minich, was at all times material to this Complaint and a licensed claims adjuster for Liberty

25    Mutual Insurance Company. Defendant Minich is licensed by the State of Georgia. He practices at Defendant LIC.

26    Defendant Minich lied to Defendant Cobb County Police Department and impeded two investigations into crimes

27    committed against Plaintiffs. He provided Plaintiffs with fraudulent information and in bad faith he fraudulently

28    changed accounting records to harm the Plaintiffs.

29    18. COBB COUNTY TAX ASSESSORS OFFICE/ COBB COUNTY TAX COMMISIONER'S

30    OFFICE

31    736 Whitlock Ave. NW

32    Suite #100

STATEMENT OF CLAIM - 7

1    Marietta, GA 30064

2    (770) 528-8600

3  Defendant, Cobb County Tax Assessors/Commissioners Office, was at all times material to this Complaint.

4  Defendant Cobb County Tax Assessors/Commissioners Office was party to the fraudulently place tax leins on the

5  property of Plaintiff's. Defendant conspired with Defendant Onan to place a fraudulent tax lien on Plaintiff's

6  property. It was only after Defendant Onan admittedly intruded upon Plaintiffs' privacy at the tax commissioner's

7  office did the fraud begin to come from their office. Defendant after being informed of their error in the calculation

8  of property tax, refused to refigure until the full, fraudulent bill had been paid. After Defendant forced Plaintiffs to

9  undergo the embarrassment of tax sale advertisments and asking family to help with the inflated tax bill, Defendant

10  has now corrected the error in the amount of taxes assessed to Plaintiffs. Their actions were malicious and knowing.

11    19. WESTSIDE ELEMENTARY SCHOOL

12    344 Polk Street

13    Marietta, GA 30064

14    (770) 429-3172

15  Defendant Westside Elementary School was at all times material to this Complaint. Defendant violated Plaintiff D.

16  Nezbeda's right to access to his minor child. Defendant denied Plaintiff his constitutional right to due process and

17  equal protection by allowing Defendant Mckweon to enter emergency information in the minor son's permenant file

18  with no legal basis of her claims. Defendant also allowed Defendant Onan to interfere with no validation made to

19  her authority to do so. Defendant has a duty to both Plaintiff D. Nezbeda and his minor son to investigate any and all

20  claims of involuntary termination of any parental right.

21    20. NORTH POINT PSYCHOLOGY

22    3534 Old Milton Pkwy

23    Alpharetta, GA 30005

24    (404) 492-6063

25  Defendant, North Point Psychology, was at all times material to this Complaint and a psychologist who practices his

26  profession in the area of Cobb County, Georgia. Defendant Buchanan works at North Point Psychology as a APA

27  licensed psychologist. He practices at North Pointe Psychology, wherefore it is alleged that he personally

28  participated in or directed the alleged violations of Plaintiff's rights while cloaked "under color of law" and that his

29  specific conduct was the direct or proximate cause of Plaintiff's injury and causes for relief.

30    21. COBB COUNTY ADULT DETENTION CENTER

31    County Services Road

32    Marietta, GA 30008

STATEMENT OF CLAIM - 8

1   (770) 499-4200

2   Defendant, Cobb County Adult Detention Center, was at all times material to this Complaint. Defendant was party

3   to the unlawful imprisonment of Plaintiff D. Nezbeda. Defendant was also a party to the medical mistreatment

4   suffered by Plaintiff D. Nezbeda while he was detained unconstitutionally at Defendant Cobb County Adult

5   Detention Center. Defendant also allowed repeated violation of prisoners rights as well as standards of humane

6   treatment of the mentally ill. Plaintiff D. Nezbeda was forced to endure and witness abuses by guards and other staff

7   while held illegally at Defendant.

8   22. COBB COUNTY CLERK OF SUPERIOR COURTS

9   70 Haynes Street

10   Marietta, GA 30090

11   Defendant, Cobb County Clerk of Courts, was at all times material to this Complaint. Defendant Cobb County Clerk

12   of Superior Courts failed multiple times to follow proper protocol for filings, These improper filings by Defendant

13   have violated the right to privacy afford to the Plaintiff's in the US Constitution.

14   (770) 528-1801

15   23. Mark Lively

16   402 Bell Court

17   Woodstock, GA 30188

18   (770) 503-4940

19

20   Defendant, Mark Lively, was at all times material to this Complaint and an insurance appraiser who practices his

21   profession in the area of Cobb County, Georgia. Defendant Lively is a USAA certified claims adjuster.  He practiced

22   at In-Line Consulting and for himself wherefore it is alleged that he personally participated in or directed the alleged

23   violations of Plaintiff's rights and that his specific conduct was the direct or proximate cause of Plaintiff's injury and

24   causes for relief.

25   24. RJMW

26   2200 Executive Street

27   Charlotte, NC 28208

28   (704) 537-0012

29   Defendant, RJMW, was at all times material to this Complaint and an insurance appraiser who practices his

30   profession in the area of Cobb County, Georgia. Defendant McRorie is a USAA certified claims adjuster employed

31   by RJMW.  He practiced at RJMW and for himself wherefore it is alleged that he personally participated in or

32   directed the alleged violations of Plaintiff's rights and that his specific conduct was the direct or proximate cause of

STATEMENT OF CLAIM - 9

Plaintiff's injury and causes for relief. Defendant extorted Plaintiff's through his personal friendship with Defendant Leonard.

25. INLINE CONSULTING

402 Bell Court

Woodstock, GA 30188

(770) 544-0313

info@inline.us

Defendant, In-Line Consulting, was at all times material to this Complaint and an insurance appraiser who practices his profession in the area of Cobb County, Georgia. Defendant Lively is a USAA certified claims adjuster employed at In-Line Consulting. He practiced at In-Line Consulting and for himself wherefore it is alleged that he personally participated in or directed the alleged violations of Plaintiff's rights and that his specific conduct was the direct or proximate cause of Plaintiff's injury and causes for relief.

26. Douglas White

2625 Cumberland Pkwy

Suite #125

Atlanta, GA 30339

(770) 432-6422

Defendant, Douglas White, was at all times material to this Complaint and an insurance appraiser who practices his profession in the area of Cobb County, Georgia. Defendant White is a USAA certified claims adjuster. He practiced at White Heart Associates and for himself wherefore it is alleged that he personally participated in or directed the alleged violations of Plaintiff's rights and that his specific conduct was the direct or proximate cause of Plaintiff's injury and causes for relief. He signed fraudulent appraisal award forms he never reviewed. As a licensed appraiser Defendant has a fiduciary duty to properly access all award he signs.

27. White Heart Associates, LLC

2625 Cumberland Pkwy

Suite #125

Atlanta, GA 30339

(770) 432-6422

Defendant, White Heart Associates, was at all times material to this Complaint and an insurance appraiser who practices his profession in the area of Cobb County, Georgia. Defendant White is a USAA certified claims adjuster employed at White Heart Associates. He practiced at White Heart Associates and for himself wherefore it is alleged that he personally participated in or directed the alleged violations of Plaintiff's rights and that his specific conduct

STATEMENT OF CLAIM - 10

1    was the direct or proximate cause of Plaintiff's injury and causes for relief. He signed fraudulent appraisal award
2    forms he never reviewed. As a licensed appraiser Defendant has a fiduciary duty to properly access all award he
3    signs.

4              28. Judicial Qualifications Committee

5              P.O. BOX 2179

6              Covington, GA 30015

7              (404) 558-6940

8    Defendant Judicial Qualifications Committee was at all times material to this complaint. Defendant acted in bad
9    conduct when they allowed their investigator/committee members to practice law and other services in Courtrooms
10   of the very Judges they are currently investigation. Defendant has a fiduciary duty to properly investigate complaints
11   filed with them by citizens of the State of Georgia.

12

13                                    JURISDICTION and VENUE

14   28. This is an action for declaratory and injunctive relief and relief for damages brought by Plaintiffs, who are
15   unable to afford an attorney and comes before this Court Pro Se. The subject of this suit is the depravation of
16   Plaintiff's constitutionally guaranteed rights and conspiracy to violate those rights. Plaintiff and their family have
17   undergone extraordinary harassment, intimidation, and threats by state officials and other parties. He and his family
18   have suffered extreme mental anguish in pursuit of redress for a lengthy pattern of deprivations of his Constitutional
19   rights and liberties, malicious acts, and the financial demise the plaintiffs and their family.

20   29. This claim arises under the United States Constitution. As those issues concern the Plaintiff, this case involves
21   claims that the defendants conspired and engaged in conduct in furtherance of that conspiracy which violates the
22   HOBBS act and the Plaintiff's civil rights afforded to him under federal statute. Authority for this suit is given to this
23   Court under USC Title 42 §§ 1983, 1985, 1986, 1988, and Civil RICO USC Title 18 § 1964, 1962(c)

24   30. Numerous criminal acts under Federal and Georgia criminal code give rise in support of this action out of the
25   same operative facts under USC Title 18 §§ 241, 242, 1503, 1510-1513, 1963, 1959, 1346, 2(a), 2(b), HOBBS 1951,
26   and RICO.

27   31. Defendants also reside in or are businesses based out of States other than Georgia.

28

29                                    STATEMENT OF CLAIM

30   32. Plaintiff David Andrew Nezbeda is a father of one minor child, who resides in Georgia.

31   33. Plaintiff Heidi Nezbeda is the wife of Plaintiff David Nezbeda and as a result has been injured through the
32   Defendants' actions.

STATEMENT OF CLAIM - 11

1   34. Commencing on or around January 8ᵗʰ, 2014 and continuing to the date of this filing, the Defendants,

2   individually and jointly, did take certain actions and make certain statements regarding the Plaintiffs as set forth

3   herein.

4   35. The Defendants did so intentionally, maliciously, and with an intent to injure the Plaintiffs.

5   36. The Defendants did so without authorization or right.

6   37. As a direct result of the Defendants actions, Plaintiffs have suffered harm as set forth herein.

7                                    DEMAND FOR JURY TRIAL

8   38. Plaintiffs hereby exercises their right to demand a trial by jury of this cause.

9                                    REQUEST FOR JUDICIAL NOTICE

10  39. The Court is moved to take judicial notice of the following:

11                                   THE SUPREME LAW OF THE LAND:

12          A) The Constitution of the United States is the "supreme law of the land" and is itself a law for

13  which it is the duty of all Courts "high and low", both State and National, to sustain and enforce as they do

14  all other laws. Any law, rule, policy, or decree must be "made in pursuance thereof" and not as to subvert

15  the Constitution. **When any law or ruling is not made in pursuance thereof it is unconstitutional, void**

16  **and of no effect** (emphasis added). Even if the wording of a law or ruling is constitutionally correct, if it is

17  not applied equally it is unconstitutional. The Fourteenth Amendment Due Process Clause and Equal

18  Protection Clause are among the most defiled of all rights in the state court. State trial courts often, by

19  intimidation, false arrest, and financial restriction, deny Access to the Courts as identified by the United

20  States Fifth Circuit Court of Appeals in Ryland v. Shapiro.

21          B) Judges are only immune from suit for judicial acts within or more than their jurisdiction even if

22  those acts have been done maliciously or corruptly; the only exception being for acts done in the clear

23  absence of all jurisdiction. Gregory v. Thompson, 500 F2d 59 (C.A. Ariz. 1974)

24          C) A judge must be acting within his jurisdiction as to subject matter and person, to be entitled to

25  immunity from civil action for his acts. Davis v. Burris, 51 Ariz. 220, 75 P.2d 689 (1938)

26          D) Judges have no judicial immunity for criminal acts, aiding, assisting, or conniving with others

27  who perform a criminal act, or for their administrative/ministerial duties. When a judge has a duty to act, he

28  does not have discretion, he is then not performing a judicial act, he is performing a ministerial act.

29          E) Judicial immunity does not exist for judges who engage in criminal activity, for judges who

30  connive with, aid and abet the criminal activity of another judge, or to a judge for damages sustained by a

31  person who has been harmed by the judge's connivance with, aiding and abetting, another judge's criminal

32  activity.

STATEMENT OF CLAIM - 12

F) An objective of Civil RICO is to turn victims into prosecutors, "private attorneys general", dedicated to eliminating racketeering activity. See Rotella v. Wood.

G) In Propria Persona pleadings are to be considered without regard to technicality; In Propria Persona pleadings are not to be held to the same high standards of perfection as lawyers. Haines v. Kerner, 92 S Ct 594; Jenkins v. McKethen, 395 US 411, 4421 (1969); Pickering v. Penna Ry. Co., 151 F 2d 240; Puckett v. Cox, 456 F 2d 233; See also Powell, 914 F 2d 1459 (11th Cir 1990). Waller v. Butkovich, 605 F Supp 1137 (MD NC 1985).

H) Liability in damages for unconstitutional or otherwise illegal conduct has the very desirable effect of deterring such conduct. Indeed, this was precisely the proposition upon which 42 USC 1983 was enacted. "...Judges may be punished criminally for willful deprivations of constitutional rights on the strength of 18 US 242; Imbler v. Pachtman, US 47 L Ed 2d 128, 96 S Ct (emphasis added).

I) Persons must not be a public official to be held accountable for their use of another in a public office for the furtherance of their criminal conspiracy. (U.S. v Margiotta, 688 F. 2d 108 (2d circa 1982))

J) Of important note, under this suit, pursuance of a conspiracy, conspiracy, and willful and knowing intent need not be proven, just that the natural consequences of the alleged actions resulted in the depravation of Constitutional Rights.

K) In Levy v. Louisianad and Glona v. American Guarantee & Liability Ins. Co.," the Court stressed the importance of allowing compensation for an indirect interference with the parent-child relationship

L) Section 1962(d) applies to intracorporate, as well as intercorporate conspiracies; thus, it is possible for a corporation to engage in a RICO conspiracy with its own officers and representatives. Webster v. Omnitron Int'l, 79 F.3d 776, 787 (9th Cir.1996) (quoting with approval Ashland Oil, Inc. v. Arnett, 875 F.2d 1271 (7th Cir.1998), for the proposition that "intracorporate conspiracies ... threaten RICO's goals of preventing the infiltration of legitimate businesses by racketeers and separating racketeers from their profits")

## FEDERAL CRIMINAL CODE:

M) 18 USC § 3 Accessory after the fact, it is a criminal offense if a person knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender to hinder or prevent his apprehension, trial or punishment;

N)18 USC § 241 Conspiracy Against Rights of Citizens it is a federal criminal offense if two or more persons conspire to injure, oppress, threaten, or intimidate any inhabitant of any state, territory, or

STATEMENT OF CLAIM - 13

district in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised such right or privilege, such persons may be fined and/or imprisoned;

O)18 USC § 242 Deprivation of Rights Color of Law; It is a criminal offense if under color of any law, statute, ordinance, regulation, or custom a person willfully deprives an inhabitant of any State of his rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, and punishable by fine or imprisonment for no more than one year.

P) 18 USC § 512 Tampering with a Witness, victim, or informant; It is a federal criminal offense to interfere with the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense;

Q) 18 USC §§ 1961-1963 Racketeer Influenced and Corrupt Organizations Act; It is a criminal offence punishable by fine or imprisonment of not greater than twenty years for any acts or threat involving extortion which is chargeable under State law and punishable by imprisonment for more than one year or any act under certain provisions of Title 18 of the United States Code including but not limited to § 1341 (relating to mail fraud), § 1343 (relating to wire fraud), § 1503 (relating to obstruction of justice), § 1510 (relating to obstruction of criminal investigations), § 1511 (relating to the obstruction of State or local law enforcement), § 1513 (relating to retaliating against a witness, victim, or an informant), § 1951 (relating to interference with commerce).

R) 18 USC Sec 875: whoever transmits in the interstate or foreign commerce any communication containing any threat to kidnap or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

## STATEMENT OF CLAIM

## FIRST CLAIM
## DEPRIVATION OF CIVIL RIGHTS

## AGAINST ALL DEFENDANTS

40. Plaintiff incorporates the allegations contained in attached affidavit of fact.

41. The conduct of the Defendants under color of law described in the complaint constitutes a violation of Plaintiff's constitutional guarantees by abridging his privileges and rights under the provisions of Article I, §§ 8, 9, and 10;

STATEMENT OF CLAIM - 14

Article V; and of the First, Fourth, Fifth, Ninth, Tenth, Thirteenth and Fourteenth Amendments to the Constitution. The Defendants under color of law deprived the Plaintiff Due Process of Law, denied Plaintiff of Equal Protection of the Laws, the right to required and sufficient Notice, the right to a Hearing with proper notice, the right to an Impartial Tribunal, the right to Confront and Cross-Examine, the substantive and procedural right to Access to the Court and other rights under Georgia law. By such actions the Defendants violated Plaintiff's right to Due Process; which is actionable under 28 USC § 1983. In further support of Plaintiff's claim, he shows that Defendants violated criminal law under 18 USC §§ 241 and 242, and Georgia Statutes.

42. Defendant Leonard violated Plaintiff's right to due process by sua sponte issuing orders that denied him custody of his minor child. Defendant Leonard ripped custody of A.N. from Plaintiff with no request to do so from the mother or the Guardian Ad Litem. This not only violates the Plaintiff's right to due process, but violates GA Code 19-9-63(2).

## PREDICATE ACTS AND SUBSTANTIVE 42 USC § 1983 VIOLATIONS

43. By the conduct described in this complaint, Defendants did under color of statute, ordinance, regulation, rule custom and usage of the State subject or caused to be subjected to Plaintiffs, within the States' jurisdiction, to the deprivation of rights, privileges and immunities secured by the constitution, statutes, rules, policies, or ordinances. 44. Defendants deprived Plaintiff of rights and privileges under Georgia Rules of Civil procedure, Georgia Statutes, the Georgia Constitution, the Constitution of the United States of America and substantive and common law of the State and the United States by depravation of, but not limited to, the right to notice, right to motion and pleading as a prerequisite for a hearing, right to cross examination, the right to call witnesses, the right to a fair trial and other rights not mentioned; violations of the Constitution and criminal offense under 18 USC §§ 241 and 242.

45. Defendants deprived Plaintiff of his freedom by improper imprisonment and violated rights as afforded to him as a citizen of the United States of America and the State of Georgia.

46. Defendants deprived Plaintiff D. Nezbeda of his right to life, liberty, and the pursuit of happiness when they forced him to undergo damaging psychological evaluations while in belly chains and handcuffs, and being denied even the most basic of human dignity of restroom breaks or food during these eight plus hour long days of mental testing. These violations particularly apply to Defendant Leonard, the Cobb County Sheriff's Office, Buchanan, Cobb Co. Adult Detention Center, and North Point Psychology.

47. Violations of Plaintiffs' civil rights are evident in the attached affidavit of fact.

## SECOND CLAIM

STATEMENT OF CLAIM - 15

RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)

AGAINST ONAN, ONEAL, OLES, ARTIMES GROUP, NORTHPOINTE PSYCHOLOGY, BUCHANAN, LEONARD, LIC, LOVELACE, MINICH, MCRORIE, AND JUDICIAL QUALIFICATIONS COMMITTEE

PERSONS AND ENTERPRISES

49. Plaintiffs and all Defendants are "persons" within the meaning of 18 USC § 1961 (3).

50. Defendants Judicial Qualifications Committee, North Point Psychology, Artimes Group, and Cobb County Government are "enterprises" as defined in 18 USC § 1961 (4) by virtue of being an individual, partnership, corporation, association or other legal entity. All of the defendants are participants in an "association-in-fact" enterprise hereinafter referred to as the "Enterprise".

51. The "Enterprise" also consists of attorneys, social workers, health care professionals, drug testing facilities, and the institutions that participate in identifying the requisites for the family structure, caretakers, and parental roles. It is the aggregate made of many other enterprises whose profits depend on the misfortunes of families. Its mission is the appropriation of illegal income, which it obtains from the victims of an erroneous system of guidelines, practices and habits developed by the Enterprise that are in violation of the laws of the United States, State of Georgia and the County of Cobb. The purpose of the enterprise is separate and distinct from the racketeering activities in which the enterprise has engaged. All of the defendants named in this claim have participated in the affairs of this enterprise as described below. The Enterprise operates as follows:

a) By making false allegations and fraudulent statements, including introducing such allegations as fabricated drug use and unsafe living environments, and fraud in custody, access (visitation), and child support proceedings

b) By willfully and intentionally fabricating "evidence" and pleadings interposed in bad faith with malice to achieve their end, without fear of punishment because of the habits, guidelines and conspiratorial nature of their criminal activities

c) By calculated harassment to force the victim and his family into financial ruin so that the victim cannot seek legal recourse

d) By damaging the victim through slander and libel. Defendants made false statements, produced false evidence, and gave false testimony during court proceedings

e) By conspiring with the previous spouse of the victim to cause immense mental suffering by removing the victim's child from their lives and the lives of their other minor children

f) By going so far as to cause the victim to be falsely imprisoned for offenses that are not illegal or criminal

STATEMENT OF CLAIM - 16

g) By denying victim's the right to peaceful existence through non-stop, coordinated attacks on the victim's financial and private lives

h) By forcing, unconstitutional psychological testing with members of the enterprise to cause the victim loss of their children, jobs, spouses, and family members. These illegal, invasive exams are done without warrant to normal psychological care or standards. The results are inevitably whatever will fit best into the picture that the "enterprise" is trying to paint of the victim. These exams are disgusting abuses by medical professionals.

i) The "enterprise" uses contempt charges as cannon fodder for their attacks against the victim. The victim is kept in constant fear of incarceration. These sporadic periods of incarceration for completely unconstitutional reasons, result in loss of jobs, relationships, and even more ties with the child(ren) at hand.

j) At all points mentioned above the members of the "enterprise" are making money at the expense of the victim. Drug testing labs make their cut, supervised visitation centers theirs, psychologists theirs, GALs theirs, attorneys theirs, judges theirs, court transcribers theirs, the jails at which the victims are incarcerated theirs, the guards at the jails theirs, the experts theirs, the courthouse theirs, the colluding ex-spouse theirs, and the list goes on and on.

## PREDICATE ACTS

52. By the conduct described in the Complaint, Defendants did

i) knowingly used intimidation, threats, and misleading conduct toward the Plaintiff with the intent to prevent the testimony of the Plaintiff,

ii) hinder and prevent communication

iii) intentionally harassed Plaintiff

iv) committed HOBBS act violations of extortion

v) used the mail to scheme

vi) committed fraud

vii) committed obstruction of justice

viii) racketeering

ix) robbery

x) bribery and

xi) which by their magnitude constitute a predicate RICO act under Title 18 USC § 1961 (1) (A).

## PATTERN OF RACKETEERING ACTIVITY

STATEMENT OF CLAIM - 17

53. The unlawful conduct alleged in the attached affidavit of fact constitutes a "pattern of racketeering activity" within the meaning of Title 18 USC § 1961 (5). These activities had the same purposes of obtaining illegal income or obtaining a benefit to which they would not otherwise be entitled. As such, they are related to one another within the meaning of the "relationship element" of a RICO pattern, having the same participants, results and methods of commission. These activities have taken place over an extended period of time, from January 2015 to the present. Some of the Defendants have as recently as January 18, 2017. Other children and parents, including the Plaintiff's children and family, on information and belief, are being victimized by these illegal activities in which these same defendants continue to participate. The conduct of the defendants in infiltrating those activities, if unchecked, carries the threat that the necessary protection of the individual and collective rights of the victimized children and parents may cease to exist and cause immeasurable injury to both their emotional well-being and their general well-being. It is this type of long-term and deep reaching conduct that RICO was conceived to prevent and comports with the "continuity" element of a RICO pattern.

54. The members of the "enterprise" work together often in the scheme of the family courts of Cobb County, Georgia and surrounding areas. They use their power and influence to the ruination of parent's time and time again and the pattern is clear from court records of the Defendants.

## SUBSTANTIVE RICO VIOLATIONS

55. Because of the conduct alleged in this Complaint, Defendants have violated RICO in that they have:

   a)Acquired or maintained, directly or indirectly, an interest in or control of an enterprise (the "Enterprise") and of the component enterprises of the aggregate in or affecting and preventing the filing and communication of federal civil and criminal complaints, testimony, and evidence pertaining to other criminal RICO, both Federal and State criminal violations, civil torts and civil violations to law enforcement officials or judges of the United States through a pattern of racketeering activity, in violation of Title 18 USC § 1962 (b); and/or:

   b)Participated in, associated with or conducted the affairs of an enterprise, including all alleged enterprises, in or affecting the filing and communication of federal civil and criminal complaints, testimony, and evidence pertaining to other criminal RICO, both Federal and State criminal violations, civil torts and civil violations to law enforcement officials or judges of the United States through a pattern of racketeering activity, in violation of Title 18 USC § 1962 (c); and/or Conspired to violate Title 18 USC § 1962 (c) in violation of Title 18 USC § 1962 (d).

STATEMENT OF CLAIM - 18

1
2
3
4
5                                    THIRD CLAIM
6                                INVASION OF PRIVACY
7
8    AGAINST ALL DEFENDANTS
9    57. Defendants trespassed upon and invaded Plaintiff's right to privacy in that they have, on one or more occasions,
10   willfully and without justification or authorization, intruded into Plaintiff's seclusion and obtained access to private
11   information about Plaintiffs.
12   58. By the conduct alleged in this Complaint, Defendants deliberate actions conspired to and did intentionally
13   intrude on the personal privacy of the Plaintiffs in their right to private and peaceful enjoyment of their relationship
14   with their children and family.
15   59. Defendant's intrusion on Plaintiffs' privacy was substantial and is highly offensive and objectionable to persons
16   of reasonable sensibilities.
17   60. Defendants publicly and without right or authorization disclosed private facts concerning Plaintiff and his mental
18   health to third parties, and that such disclosures are offensive to the reasonable person of ordinary sensibility.
19   61. The public has no authentic concern with Plaintiffs' private information and the disclosure disrobed them of
20   their rights to privacy provided to Georgia citizens and United States Citizens.
21   62. Defendant's willful action with reckless disregard to the rights of the Plaintiff and said actions intruded upon the
22   Plaintiff D. Nezbeda's private communication with his child and denied communication and access. These actions
23   both disturbed the Plaintiff and the stability of the child, the familial relationship and intruded upon the private
24   father-son relationship. This is agreed upon by at least three different doctors who specialize in child psychology.
25   63. Defendant's willful action with reckless regard to the Plaintiff's privacy extended to all reaches of his life and
26   greatly impacted his business relationships as well as personal relationships.
27   64. In Roe v. Wade, the Court stated that the right to privacy has "some extension to activities", "pertaining to
28   family relationships, child rearing and education,".
29
30
31
32

STATEMENT OF CLAIM - 19

1
2
3
4
5                                    FOURTH CLAIM
6                  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
7
8    AGAINST ALL DEFENDANT'S
9
10   66. Plaintiff incorporates the allegations contained in the attached affidavit of fact and in the statements above.

11   67. Defendants actions were deliberately calculated to interfere with Plaintiff's father-son relationship and to alienate

12   the son from his father.

13   68. All of the above actions by the Defendants have been intended and calculated by them to cause extreme

14   emotional distress to the Plaintiff, or alternatively, Defendants knew or should have known that their actions would

15   result in extreme emotional distress to the Plaintiff.

16   69. Actions by the Defendants have been so extreme and outrageous as to go beyond all possible bounds of decency,

17   especially that it interrupts and denies the father-child relationships, and even violates Georgia Statutes intended

18   specifically to maintain those relationships.

19   70. Defendants individually and jointly engaged in specific acts and a pattern of conduct directed against the

20   Plaintiff.

21   71. In or about and commencing in January of 2015, Defendants made overt and covert, written and verbal, false,

22   demagogic, malicious statements to third parties regarding the Plaintiffs and Plaintiff D. Nezbeda's mental

23   condition.

24   72. In or about commencing in January of 2015, Defendants made unsubstantiated and false claims regarding

25   Plaintiffs.

26   73. Defendants made unsought, unprofessional, unsanctioned, unethical, and slipshod diagnoses of Plaintiff D.

27   Nezbeda's mental condition, and published such diagnoses to third parties.

28   74. Defendants shared and discussed Plaintiff D. Nezbeda's protected health information with third parties and

29   without acquiescence.

30   75. Defendants shared Plaintiff D. Nezbeda's privileged patient/therapist communications with third parties without

31   permission.

32

STATEMENT OF CLAIM - 20

1   76. Prior to Defendant's statements, Plaintiff D. Nezbeda possessed a good reputation for mental health and
2   character as a father.

3   77. Following the Defendant's statements Plaintiffs have had to repeatedly defend themselves.

4   78. Defendants' conduct was directed at the Plaintiffs.

5   79. Defendants' actions have caused Plaintiffs emotional distress, humiliation, embarrassment, anguish, mental pain,
6   and suffering.

7   80. Defendant Leonard has made threats of Supreme Court of Georgia Contempt charges towards Plaintiffs several
8   times as a result of Plaintiff D. Nezbeda filing a motion to recuse him.

9   81. The emotional distress, anguish, mental pain, and suffering was/is extreme and severe in nature.

10   82. Plaintiffs were forced to suffer significant monetary expense to invalidate Defendants' false and spiteful
11   allegations and unfounded assertions.

12

13

14                                      FIFTH CLAIM

15                                    CIVIL CONSPIRACY

16

17   AGAINST ALL DEFENDANTS

18

19   83. Plaintiff incorporates the allegations contained in attached affidavit of fact and statements above.

20   84. Defendant, Mark McRorie, conspired with Defendants to interfere and interrupt the Plaintiffs family

21   relationship. This conspiracy and interruption constitutes interference with Plaintiff's family relationships and an

22   invasion of his privacy by intruding into his personal affairs and intentionally imposing emotional distress upon

23   Plaintiff.

24   85. The Defendants came to agreements to break the law on several occasions, as illustrated in the attached affidavit
25   of fact.

26   86. The Defendants all achieved lawful aim by the unlawful means.

27   87. The defendants committed several overt acts in furtherance of the conspiracy as outlined in the attached affidavit
28   of fact.

29   88. There were damages and injury to the Plaintiff as set forth the attached affidavit of fact.

30   89. In furtherance of their conspiracy the Defendants carried out the acts which they conspired to do.

31

32                                      SIXTH CLAIM

STATEMENT OF CLAIM - 21

1

2

TORTIOUS INTERFERENCE WITH FAMILY RELATIONS

3 AGAINST ALL DEFENDANTS WITH SPECIAL NOTE TO PLAINTIFF MCKWEON AS HER ROLE AS

4 MOTHER IS TO PROVIDE HER CHILD AND THE FATHER OF HER CHILD WITH CONSORTIUM

5 BETWEEN THE TWO

6 90. Plaintiff incorporates all facts included in the attached affidavit of fact and mentioned in statements above.

7 91. Plaintiff has a right to establish or maintain a parental and custodial relationship with his minor child.

8 92. The Defendants outside of the relationship between the Plaintiff and his child intentionally interfered with the

9 complaining parent's parental and custodial relationship with his child by removing and detaining the child from

10 returning to the Plaintiff, without that Plaintiff's consent, and by otherwise preventing the Plaintiff from exercising

11 his parental and custodial rights.

12 93. The Defendants intentional interference caused harm to the Plaintiff's parental and custodial relationship with his

13 son.

14 94. Damages, as shown in attached affidavit of fact, resulted from such interference.

15 95. Plaintiff incorporates the allegations contained in the attached affidavit of facts.

16 96. In Roe v. Wade, the Court stated that the right to privacy has "some extension to activities", "pertaining to

17 family relationships, child rearing and education,".

18 97. The actions of the Defendants have caused, and were deliberately intended to

19 cause, an intentional interference with the family relationship, i.e.: the relationship of

20 the Plaintiffs with their children, parents and siblings.

21

22

23

SEVENTH CLAIM

24

BREACH OF CONTRACT

25 AGAINST DEFENDANT LIC, OLES, ONAN, MCRORIE, COLEMAN, ODANIEL, & MCKWEON, LEONARD,

26 LIVELY, WHITE, WHITE HEART ASSOCIATES, INLINE CONSULTING, RJMW, BRICKEY, ONEAL

27 98. Plaintiffs incorporates the allegations contained in attached affidavit of fact and above statements.

28 99. Defendant LIC failed to follow their own contract. They failed to provide the correct contract. LIC failed to

29 provide coverages provided by the contract between themselves and Plaintiff D. Nezbeda.

30 100. Defendant LIC failed to properly follow protocol for the appraisal process.

31 101. Defendant LIC and their representatives entered the dwelling with no permission, which is a direct violation of

32 the contract entered into by LIC and Plaintiff D. Nezbeda.

STATEMENT OF CLAIM - 22

102. Defendant LIC failed to act in a timely manner during any portion of the claims process.

103. Defendant LIC failed to ensure that their employees followed legal avenues to obtain information.

104. Defendant LIC, by and through their attorneys, admits to gaining access to the property without permission of the owner and with the owner not present.

105. Defendant LIC failed to maintain the integrity of the appraisal process, by allowing their representative, Reginald Lovelace to interfere with the work of the appraisers.

106. Defendant LIC failed to properly house Plaintiffs during the claim process, as set forth in the contract at question.

107. Defendant LIC failed to make prompt and accurate payments to Plaintiffs.

108. Defendant LIC failed to follow proper industry standards pertaining to such contracts, by holding out payments for extended periods of time.

109. Defendant LIC committed breach of contract when they failed to provide payment for advanced living expenses, as provided in the contract, for months during the claims process.

110. Defendant LIC failed to follow the contract when they refused to promptly pay the disputed amount of the appraisal award for months after the appraisal was completed.

111. Defendant Mcrorie failed to perform his duties of the verbal contract he entered with Plaintiff D. Nezbeda.

112. Defendant Mcrorie failed to meet industry standards of his profession and did not comply with the ethics of the associations he lists on his website, social media, and business resume.

113. Defendants Oles, Coleman, Onan, Brickey, Leonard, Oneal, and Odaniel failed to follow their contract to uphold the ethics of their jurisdiction when they took their oath as recognized attorneys in the State of Georgia.

114. Defendant Mckweon failed to follow the contract entered during September of 2014 during a mediation between herself and the Plaintiff D. Nezbeda.

115. The Defendants all committed willful acts resulting in the breach of contracts with Plaintiff.

## EIGHTH CLAIM

## BAD FAITH

AGAINST ALL DEFENDANTS

116. Plaintiff incorporates the allegations contained in attached affidavit of fact and statements above,

117. Defendants acted unreasonably when interacting with Plaintiff.

118. Defendant LIC acted in bad faith at all times during its handling of the Plaintiff's home insurance claim.

119. Defendant LIC acted in bad faith at all times during their handling of the home insurance claim made by the Plaintiff, with full knowledge that their actions were in bad faith,

STATEMENT OF CLAIM - 23

120. Defendant LIC exhibited these behaviors as set forth in the attached affidavit of fact.

121. Defendants, all knowing the harm their actions would cause the Plaintiff, chose to act in contrary to the law and standards of decency.

## NINETH CLAIM

### EXTORTION; HOBBS ACT VIOLATIONS

AGAINST DEFENDANTS MCRORIE, ODANIEL, LEONARD, BRICKEY, ONEAL, ONAN, COBB COUNTY GOVERNMENT, BUCHANAN, NORTHPOINT PSYCHOLOGY, COLEMAN, OLES, COBB COUNTY SHERRIFFS OFFICE, MCKWEON

122. Plaintiff incorporates the allegations contained in attached affidavit of fact and above statements.

123. As is the norm in extortion cases, the extortion was utilized by the "Enterprise" set forth above in the RICO ACT claim and the CIVIL CONSPIRACY claim, to further their illegal business.

124. All Defendants listed under this claim have demanded money from the Plaintiff as part of a threat of disclosing false information and taking away civil rights.

125. Defendant Mcrorie was especially audacious in the act of extortion, which can be clearly seen in the attached affidavit of fact.

126. The act of transmitting a threatening communication in the interstate commerce (i.e. telephone, email) is also punishable under US 18 875.

127. Threatening the wellbeing of another person is not a free speech as covered under the first amendment.

128. The threat left by Defendant Mcrorie on Plaintiff's voicemail would be judged to have the intention to inflict harm on the Plaintiff, by any reasonable person.

129. Defendants listed are all accountable and guilty of receiving, processing, and concealing of proceeds of extortion.

130. Defendants listed all failed to report the known extortion to the proper authorities or when they were the proper authority, failed to act upon the credible and real threats made to the Plaintiff.

131. These were thought out schemes. These were not simply slipping through the cracks.

132. Defendants Oles, Coleman, Leonard, Brickey, Oneal, Odaniel, and Onan are all practicing attorneys in the State of Georgia and have taken an oath to uphold the laws of the jurisdiction and the US Constitution and to report crimes they become aware of.

133. Defendant Leonard is especially subject to scrutiny for not reporting the use of his name in the commission of extortion and HOBBS act violations.

134. Defendants all committed these acts with criminal intent.

STATEMENT OF CLAIM - 24

135. These acts of extortion, described in the attached affidavit of fact, are punishable under the HOBBS act. Under this the Defendants must;

    a) Attempt to induce the victim to give up property

    b) Attempt to use the victim's reasonable fear of economic harm in order to attempt to induce the Plaintiff into giving up property

    c) Have conduct that actually did or potentially could obstruct, delay, or effect interstate commerce in any way or degree

    d) That the actual threat was harmful

The defendants have exhibited these behaviors in the attached affidavit of fact.

TENTH CLAIM

MEDICAL MALPRACTICE

AGAINST BUCHANAN, NORTH POINT PSYCHOLOGY, COBB COUNTY ADULT DETENTION CENTER, ARTIMES GROUP

136. Plaintiff incorporates the allegations contained in attached affidavit of fact and above statements.

137. Defendants listed had a duty to provide Plaintiff with proper and sound medical care while he was under their care.

138. Plaintiff was not only denied proper medical care, but he was given dangerous and improper care.

139. Results from these improper procedures were used to further harm the Plaintiffs.

140. Plaintiff D. Nezbeda had his private medical records rummaged through with the permission of people whom had taken oaths to protect the people they care for and the do no harm in their actions

141. Defendant Buchanan used his medical position to, in bad faith and full knowledge of the illegal nature of his actions, sway psychological tests scores.

142. These actions are especially egregious and disturbing.

143. Defendants listed breached their duty to provide proper care as described in the atrocities listed in attached affidavit of fact.

144. Defendants were the direct cause of damage and injury listed in attached affidavit of fact to the Plaintiff and his family.

STATEMENT OF CLAIM - 25

| | |
|---|---|
| 1 | ELEVENTH CLAIM |
| 2 | WRONGFUL IMPRISONMENT |
| 3 | AGAINST LEONARD, COBB COUNTY SHERRIFFS OFFICE, COBB COUNTY GOVERNMENT, COBB |
| 4 | COUNTY ADULT DETENTION CENTER, BUCHANAN, NORTH POINT PSYCHOLOGY, ONEAL, |
| 5 | MCKWEON, COLEMAN, ONAN, OLES |
| 6 | 145. Plaintiffs incorporates the allegations contained in attached affidavit of fact and above statements. |
| 7 | 146. Defendants had the intent to confine Plaintiff D. Nezbeda. |
| 8 | 147. Defendants' acts resulted in the confinement of the Plaintiff D. Nezbeda. |
| 9 | 148. The confinement of Plaintiff D. Nezbeda resulted in injury and damage as set forth in the attached affidavit of |
| 10 | fact. |
| 11 | 149. Defendants' had no authority to imprison Plaintiff D. Nezbeda. |
| 12 | 150. Defendants' held Plaintiff D. Nezbeda longer than ordered. |
| 13 | 151. Defendants' wrongfully imprisoning Plaintiff D. Nezbeda resulted in Plaintiffs losing their jobs. |
| 14 | 152. This wrongful imprisonment was a direct violation of the Plaintiff's fourth amendment rights, as provided by |
| 15 | the United States Constitution. |
| 16 | 153. Plaintiff D. Nezbeda was held, improperly at the Cobb County Adult Detention Center for 9 days during |
| 17 | December of 2015. During this time, Plaintiffs experienced severe trauma and mental anguish. |
| 18 | 154. The false imprisonment created havoc in Plaintiffs' lives and caused irreparable damage to even more of the |
| 19 | Plaintiffs' business relationships. |
| 20 | 155. All persons who personally participate or cause an unlawful detention are held to be liable. |
| 21 | 156. Persons other than those who actually cause an imprisonment may be held jointly liable with others, as |
| 22 | instigators or participants. |
| 23 | |
| 24 | TWELFTH CLAIM |
| 25 | NEGLIGENCE |
| 26 | AGAINST ALL DEFENDANTS |
| 27 | 157. Plaintiff incorporates the allegations contained in attached affidavit of fact and above statements. |
| 28 | 158. All Defendants had a clear Duty of Care to the Plaintiffs. |
| 29 | 159. All Defendants breached that duty to the Plaintiffs and the minor son. |
| 30 | 160. Defendants knowingly and wantonly breached their duty to Plaintiffs with malicious intent. |
| 31 | 161. Plaintiff D. Nezbeda filed proper complaint against Defendant Buchanan with the State Licensing Board prior |
| 32 | to filing this claim. |

STATEMENT OF CLAIM - 26

1  162. Defendants directly caused injury to Plaintiffs.

2  163. Defendant Buchanan gave no regard to his duty to Plaintiff D. Nezbeda and performed unethical tests on
3  Plaintiff while he was falsely imprisoned.

4  164. Defendant LIC since January of 2014 have knowingly breached their contract and the duty of care that goes
5  along with a homeowner's policy.

6  165. Defendant Lovelace and Minich chose not to act in a manner according to the duty that is assigned to their
7  position as a licensed insurance adjuster in the State of Georgia with the expected result of injury to Plaintiffs.

8  166. Defendants McRorie, Lively, and White failed to maintain the duty of care expected of licensed insurance
9  appraisers, specifically to cause harm to Plaintiffs.

10  167. Defendant Mckweon failed to maintain the expected duty of care by providing her minor child with access to
11  his other parents and going so far as to deny the minor child access to his father at all times.

12  168. Defendant Oneal, Onan, Oles, Coleman, Brickey, Leonard, and ODaniel had a fiduciary duty to Plaintiffs and
13  to the public to go to the proper authorities when notified of extortion taking place with the use of the name of a
14  Superior Court Judge.

15  169. Defendant Leonard had a duty to report his name and office of having been used in the extortion of a litigant.

16  170. Defendant Cobb County Tax Assessor/Commissioners Office had a duty to properly calculate property taxes at
17  the time requested.

18  171. Defendant Cobb County Tax Assessors/ Commissioners Office had a duty to act in a respectful manner when
19  interacting with the Plaintiffs.

20  172. Defendant Cobb County Tax Assessors/ Commissioners Office had a duty to refund monies paid to them
21  through their negligent and erroneous calculations.

22  173. These breaches in duty owed resulted in serious and irreparable injury to the Plaintiffs.

23  174. These actions and results are illustrated in the attached affidavit of fact.

24

25

26

27

28

29

30

31

32

STATEMENT OF CLAIM - 27

1      THIRTEENTH CLAIM

2      SLANDER/ LIBEL

3    AGAINST ALL DEFENDANTS

4    175. The allegations set forth above and in the attached affidavit of truth are incorporated.

5    176. Defendants intentionally expressed publicly false and malicious statements concerning Plaintiffs, including that

6          a) Plaintiff D. Nezbeda was suffering from alcoholism

7          b) Plaintiffs had engaged in immoral conduct

8          c) Plaintiff was coming "unraveled"

9          d) Plaintiff D. Nezbeda had multiple DUI's

10         e) Plaintiffs' relationship was "fleeting"

11         f) Plaintiff was aggressive

12         g) Plaintiff D. Nezbeda had a "problem with women"

13         h) Plaintiffs abused their animals

14         i) made other disparaging remarks about Plaintiffs.

15   177. Prior to Defendants' statements, Plaintiffs had enjoyed a good reputation.

16   178. Defendants intentionally published false and malicious written statements concerning Plaintiff, including that:

17         a) Plaintiff D. Nezbeda was suffering from alcoholism

18         b) Plaintiff D. Nezbeda was suffering from marijuana addiction

19         c) Plaintiff D. Nezbeda is unstable

20         d) Plaintiffs are drug users

21         e) Plaintiffs were acting in immoral ways

22         f) made other disparaging statements about Plaintiffs.

23   179. Defendants' statements have caused Plaintiffs injury and damage to their reputation in the community, their

24   relationships with their children, and sizeable cost and expense to continually defend their good names, and they

25   have been exposed to public ridicule.

26

27   Wherefore plaintiff prays this Court issue equitable relief as follows:

28

29   1. Issue Judgement in the amount of $5,000,000.00 to the Plaintiffs

30

31   2. Issue other relief as this Court deems appropriate and just.

32

STATEMENT OF CLAIM - 28

3. Award plaintiffs their costs of litigation.

Dated this ____ of April 2017.


David Andrew Nezbeda, Pro Se
Heidi Christine Nezbeda, Pro Se

STATEMENT OF CLAIM - 29

AFFIDAVIT OF DAVID ANDREW NEZBEDA

1. My name is David Andrew Nezbeda. I am over the age of 18. I am under no duress while writing this statement. I have personal knowledge of the actions referenced in the following statements. The statements following are true to the best of my knowledge.

2. Defendant Mckweon, on August 29ᵗʰ, 2009, fled the State of Tennessee. She stole my son from me. She moved to Georgia, with our son. She never told me of any plans of her leaving and most certainly never told me any plans to remove our son from our martial residence. She and her extended family, dug through my entire home and rummaged like they were at a yard sale. They striped the martial residence of all furnishings necessary for our minor son, who was an infant at the time. They stole my son's crib out of his nursery.

3. I tried several times to reunite with my ex-wife. She was unmoving on her position about ripping our family apart. She refused to return our son to his home. She moved herself and our minor son into her parent's home in Marietta, GA.

4. I filed for divorce, and after much work on me and my three attorney's parts, I was finally divorced in October of 2011.

5. She used the same pattern of making friends with the Courts, to gain a favorable outcome in those divorce proceedings.

6. Since Defendant Mckweon stole our son, and relocated him 3 hours away, I moved to Georgia. I did this specifically to gain more parenting time with our child.

6. On May 7th, 2012 Plaintiff filed a petition for modification of child custody in Cobb County, Georgia. The case was assigned to the Honorable Judge Kreeger.

7. On August 21st, 2012 Defendant McKweon by and through her attorney Jason A. Johnson called an emergency hearing, using the courts as a weapon against her ex-husband. Defendant McKweon is continuing a pattern of abuse through the courts that she began in Tennessee, during the original divorce case. She filed this "emergency hearing" while I was on a Disney vacation with my minor son. I was forced to leave the vacation and return to Georgia to defend the hysterics of Defendant McKweon, much to the detriment of my minor son. Judge Kreeger signed a temporary order for child visitation until the final could be heard. There was also to be "an order to follow" for the appointment of a Guardian Ad Litem. The order was never issued and despite attempts by the myself, the defendant Jennifer McKweon refused to pay for half of the fees, as ordered by the court and thus there was no guardian appointed now.

8. Judge Kreeger retired late in 2012 and his case load was passed to a newly appointed judge, Judge Robert D. Leonard. The case set untouched for over a year.

9. January 8th, 2014 my home was damaged in a flood caused by frozen pipes. I called my insurance company, Liberty Mutual Insurance Company (LIC), the day of the loss. I was informed I should begin the process of mitigation and that the claim would be covered and I would be reimbursed for any expenses incurred throughout this process.

10. I was forced to move me and my family into a one-room hotel room, with no kitchen or living area. I was never placed in appropriate housing while my home was damaged. I then

boarded his pets (3 dogs and 1 cat) in the Acworth Animal Hospital (they were boarded there for 11 months from this time).

11. On January 24th, 2014 LIC finally sent out 2 agents not assigned to his claim to my home. This was an error on Defendant LIC'S part as they sent their representatives out three days before the scheduled appointment on Monday January 27th, 2014 and I asked the LIC representatives Ryan Grattan and Defendant Jamie Minich to leave and return as soon as I could all reconvene on their scheduled appointment day, Monday.

12. Grattan and Defendant Minich, representative of LIC, stayed on my private property and proceeded to take photographs of the property after being asked to leave and return at the scheduled appointment time. There is no clause in the home insurance policy that allows trespassing and invasion of my right to privacy.

13. Before they attended the previously arranged meeting on January 27th, 2014, the home claim was denied by LIC on January 25th, 2014, through a voicemail left by Cedrick McCarterens.

14. On February 6th, 2014, I hired Defendant Clay O'Daniel, to represent me in matters against LIC involving my home claim, upon recommendation by attorney Robert Ingram of Ingram, Moore, and Steele. Ingram denied representation based on some conflict of interest.

15. Defendant LIC's representative McCarterens sent I an email on February 24th, 2014 formally denying my claim. The statements made in the denial letter were all proven to be false and lacking all credibility as later, even LIC reversed their stance and picked the claim back up

on April 10th, 2014. This action alone cost me months of time, that were spent in a dead stand still because of LIC's improper denial of coverage.

16. Defendant Odaniel informed Defendant LIC representatives in my initial contact with them, as well as in several other communications, of the detriment their incredibly slow processing of this claim is having on myself and my minor son, specifically in the custody modification action that was taking place now.

17. On April 14th, 2014 Defendant Reginald, Loveless broke into my private property and proceeded to rummage through the entirety of the home and was even so audacious as to take photographs of the interior and the exterior of the home, but even my personal belongings that were inside the home. There was no window or door unlocked to the home and any access obtained by Defendant Lovelace was through breaking in as he was never invited into the home or onto the property, most importantly when no one was present. He invaded the privacy of myself and my family when he rifled through our belongings with no permission or even knowledge of his inspection pending. I had no knowledge of Defendant Lovelace in any capacity or with any involvement to my home claim. I was still under the impression that my claims handler was Ralph McGill.

18. Defendant Lovelace THEN introduced himself to me via email the day after he breaks into my home and invades their privacy through pictures taken of their personal belongings, sent to them via email, by their self-proclaimed photographer, Defendant Reginald Lovelace. These pictures were taken while illegally inside the home that he had to commit breaking and entering to obtain access to.

19. I immediately emailed Defendant Odaniel and inquired to the legality of Defendant Lovelace's intrusion into my private property. Defendant Odaniel stated in email that it was illegal and he would consider it.

20. On June 3rd, 2014 LIC sent Engineer Daniel T. Sheehan to perform an inspection of the damages to my home. Sheehan is an engineer with S-E-A Limited. Property Damage claims for single family homes are extremely out of the ordinary for this company. S-E-A Limited focuses on much larger projects, such a roller coaster evaluation and shipping route investigation & design, even 3-d scans of underwater terrain. A single-family home frozen pipe claim is an extremely minor incident for such a company to be recruited for. Sheehan was extremely confrontational at the inspection. He questioned the need for the remediation work performed on the foundation of the home. This work was proven to be structurally needed to regain the structural integrity of the home that was lost on January 8th, 2014. He claimed the sheetrock, that had wicked water from the flooded flooring, should not have been removed (please note this is a home built in 1891 and the rebuilding/restabilization of such an aged home is quite complex).

21. Defendant Lovelace again acted in bad faith when he chose to hold onto the report from Sheehan and further delay the claims process.

22. June 11th, 2014, I filed a formal police report with Defendant Cobb County Police Department regarding the break in/ theft by taking that occurred at the property damaged in the January 8th, 2014 ice storm. This report was supposed to be investigated by Detective Todd Gomez. Todd Gomez followed up with the report until he had proof that Defendant Reginald

Lovelace breaking and entering and committing criminal trespass on my property. This evidence came by way of lies of Defendant Minich. Detective Gomez asked Defendant Lovelace why he thought it was ok to enter the property of the me without permission. He lied to the Detective and said that his manager Defendant Jamie Minich had received permission from Defendant Odaniel when he worked for me. Defendant Odaniel was immediately questioned and revealed there was never any permission for anyone, including Defendant Lovelace or anyone from Defendant LIC to enter to property without me present. Despite this clear evidence of interfering with an investigation, lying to police, and breaking and entering the case went silent.

23. I hired an engineer to perform a separate inspection on August 15th, 2014. I hired Mr. Carey Rhodes, a well-respected engineer that has been in the industry since 1988. Mr. Rhodes has experience with engineering in historic homes. He concluded from his inspection that all the remediation was needed to maintain the integrity of the home and the safety of those inside.

24. Defendants Lovelace and LIC send their first offer for total payment of the loss. They calculate and send out a check for $17,000.00. That is less than 10% of the amount eventually agreed to by appraisers.

25. Defendant LIC sent, unannounced, a check for the depreciated amount of $17,000 (the full amount recoverable after rebuilding would have been $38,236.30) I submitted estimates for work totaling $297,600.00, $240,215.88, and $244, 394.55. These estimates were from respected and legitimate construction companies in the area and included nothing not covered in the LIC insurance policy, as these estimates were prepared by well versed and

knowledgeable companies with experience repairing historic homes. The difference between the amount estimated by everyone other than the estimate concocted by LIC was over 15 times the amount presented by Defendant LIC.

26. I went to a mediation with my ex-wife, Defendant Mckweon on September 29th, 2014. She signed and agreed to all items presented that day except for weekday overnight visitation. This item was reserved to be determined by the Court.

27. Defendant Mckweon hired Defendant Leslie Dean O'Neal to represent her and fired her previous attorney, Jason A. Johnson. Defendant Mckweon reneged on her signature on the contractually obligating mediation and asked through Defendant O'Neal for the mediated agreement she signed be set aside. She gave no factual or legal grounds to warrant this. This motion was proposed on March of 2015 yet went unanswered until September 22nd, 2016.

28. On October 20th, 2014 LIC was sent a 2nd formal demand letter from myself by and through my counsel Defendant Odaniel, for immediate payment. This was a full 10 months since the loss and I was still in a hotel with my family and my pets were still in boarding.

29. The animals all developed stress disorders and chewed their fur and skin into bloody messes because of being in a boarding service at a vet's office for such a long period. This unnecessary and undue hardship was continually reported to LIC and their representatives. LIC refused to pay for vet's bills for medications for disorders developed during their lengthy stay in boarding. These bills totaled over $1600.00 which I was forced to pay.

30. On October 27th, 2014 LIC invoked the "appraisal clause" of my home insurance policy.

31. I hired defendant Mark Edward McRorie on October 28th, 2014 to represent me in the appraisal of damages to my home that were sustained in January 2014, by the suggestion of Defendant Odaniel. Defendants McRorie and Odaniel claim they were introduced specifically for this case, through a common acquaintance named Steven Snow. Both Defendants later acknowledge many other instances of their working together on cases.

32. LIC hires Mark Lively as their appraiser in the process. Defendants Mcrorie, Lovelace, LIC, and Odaniel were all aware at this point that the two appraisers knew one another from their work at Interstate Restoration. The two appraisers work together with Reginald Lovelace of LIC to compute false and incorrect estimates from October 2014- December 2014.

33. Defendant Mckweon through her attorney Defendant O'Neal filed a motion to have a Guardian Ad Litem appointed on November 25th, 2014. This was after she signed and agreed to a mediated contract with me in September. She wasn't under any duress and was properly represented at the mediation and even had her new husband, Patrick Mckweon, a CPA for AT&T was present. Defendant Leonard did not deny or approve the motion now. It sat unanswered for almost two months until Defendants Odaniel and McRorie started their scorched earth campaign against Plaintiff and they used their personal ties with Defendant Leonard to the detriment of his custody case.

34. On December 9th, 2014 Defendant McRorie and Mark Lively reached an agreement of $195,000 for the dwelling portion of the appraisal award. Emails are sent to both Defendant Odaniel and myself stating that the appraisal is complete and Defendant Mcrorie and Lively reached an agreement. Defendant McRorie states in preserved email that his "work is done".

35. Defendant McRorie states on email and preserved phone conversation that Defendants Lovelace and LIC are" illegally and unethically involving themselves" in the appraisal process, that was completed by the appraisers on December 9th, 2014 according to preserved email conversation of both appraisers, including Defendant Mcrorie.

36. On December 18th, December 17th, and December 19th the fraudulent appraisal award is signed by Mark McRorie, Mark Lively, and Douglas White respectively.

37. I received partial payment of the appraisal award on $84,000.00 & $19,500.00. Defendant LIC and Lovelace refuse to pay the additional living expenses awarded during the appraisal.

38. Defendant Clay O'Daniel emails me about his outstanding bill and the "upcoming time limits" on his home flood case. This is the first-time Defendant Odaniel mentions the fraudulent policy of a one year time frame for bringing suit against Defendant LIC.

39. Mark McRorie states on preserved recording and emails that he and Clay O'Daniel can get me the rest of my award amount if I will pay their inflated bills. He also warns me of an upcoming false expiration of a time frame for suit to be filed against Defendant LIC.

40. The harassing communications and threats from Defendant McRorie (documented in Cobb County Police Report and emails with Cobb County Detectives) and Defendant Odaniel continues with constant phone calls and emails, even throughout serious illness.

41. During the same week that Defendants McRorie and Odaniel heighten their barrage of threats and lies, Defendant Mckweon files for yet another "emergency hearing". This time

Defendant Mckweon, through her attorney Defendant O'Neal, claims "drug use". I was on an engagement celebration trip to Florida at the time. This is continuing the pattern of Defendant Mckweon using the Courts as a tool to attack her ex-husband. She displays a pattern of "emergency hearings" being called as soon as I leave out of town.

42. At the January 8th, 2015 "emergency hearing" Defendant Mckweon demands expensive drug testing be implemented. (There has never been a history of drug use displayed by myself nor has Defendant Mckweon ever alleged such until this date) She also asked for supervised visitation to be enforced, but there was no evidence to support such a drastic measure.

43. On January 8th, 2015 Defendant Gillian Onan was appointed Guardian Ad Litem by Defendant Leonard.

44. Defendant Onan has a personal relationship with Defendant Leonard's now wife, Katie Kiihln Leonard, formerly Katie Kihnl Parker. She has attended Valentine's Island seminars on Paradise Island with Defendant's wife, and possibly Defendant Leonard himself, for at least 2 years in a row. They have made trips to Columbia and Tybee Island together recently with their spouses.

45. Defendant McRorie intensified his terroristic communications at the same exact point in time that Defendant Onan was appointed to a position of power over the me, giving a friend of the Leonard family direct control over my life and future with my minor son.

46. Defendant Onan was given unlimited power by Defendant Leonard throughout her "investigation" and this was pointed out by Defendant Onan from the onset of her participation in the destruction of my life and the lives of those around me.

47. Defendant Leonard ordered I submit to a hair follicle drug screening in his January 8th, 2015 order. This order was prepared by Defendant O'Neal. She pre-determined the drug testing facility that went on record with lies in affidavit about my behavior inside their facility. Defendant Leonard falsifies the record by stating that he was ordering a guardian be appointed and drug testing implemented based on past drug use and problems with living arrangements of myself and family. There have never been such issues brought up in these or any other courts.

48. Defendant O'Neal also prepared the order appointing a Guardian Ad Litem. Defendant O'Neal wrote the order in a manner not complying with O.C.G.A 15-11-105, which very explicitly describes the power and the restraints on a Guardian Ad Litem in cases in the state of Georgia. This is violated several times in this order and allows for drastic invasions into the privacy of myself and his family. The order gave the Guardian Ad Litem the power over my mental health records, health records, and all financial records. This is not within the scope of a Guardian Ad Litem's duties in the state of Georgia and is in fact expressly prohibited.

49. Defendant Leonard signed this order with full knowledge of O.C.G.A 15-11-105 and that the order presented to him did not comply with it. An order that does not comply with the law is no valid.

50. Defendant Leonard repeatedly throughout this case has expressed that the Defendant Onan had "unlimited power" and therefore she could never be scope creeping".

51. Defendant Leonard appointed Defendant Onan on that day. He had no prior knowledge of the motions that would be presented in court on January 8th, 2015, unless the Court had ex-

parte communications with Defendant O'Neal. During a March 31st, 2015 hearing, Defendant Leonard, unprovoked, stated in court that he appointed Defendant Onan because he knew that "Onan and O'Neal had never worked together before." He couldn't have known that in time to write her name in the blank space provided by Defendant O'Neal on that day while in court.

52. My wife and I were on a cruise on the day of the trial and unfortunately missed court. There were receipts of the trip and even a letter from the captain of the Ship confirming that I was onboard. Defendants O'Neal, Onan, and Leonard all deny that the I was on a cruise despite irrefutable evidence to the contrary and continue to this date to still cost copious amounts of money to be spent defending the difference between a "day cruise" and a "cruise" and they continued to exchange banter back and forth even through the final trial that was over a year later.

53. I reported to Artimes Group in Powder Springs, GA on January 20th, 2015 and provided a hair follicle screening for drug use. Test results were given on January 27th, 2015 to all counsel and parties involved. This was the first adulterated test from the Artimes Facility and Defendant Kelly Martinez.

54. On January 24th, 2015 Defendant Mckweon, with no court backing, enters a "red alert" into our minor sons' permanent record at his school, Defendant Westside Elementary. She did this illegally and it resulted in intense embarrassment and sever damage to my and my wife's reputation at Defendant Westside Elementary School. Defendant Mckweon went so far as to remove all information pertaining to the minor son's me, his father. She did all this with no authority to do so.

55. I and Defendants O'Neal, Onan, and Mckweon all received the false positive hair follicle screening, fraudulently provided by Artimes Group, LLC on January 27th, 2015.

56. I immediately returned to Artimes Group to take a urine drug screening to prove the absence of marijuana in his system. Defendant Artimes Group and their employees were all aware of the court orders for I was to comply with drug testing requested by the guardian ad litem. This screen proved to show no marijuana or other drugs in my system.

57. While at Defendant Artimes Group, giving a court ordered urine screen, was made a mockery of. The employees of Defendant Artimes Group treated me with such disrespect for decency that it should not be allowed. Upon first arriving for the test, the employees instructed me to go into a restroom and give a urine sample in a cup handed to him by Warren Owen. I paid for the test, complied with the test, and left. After leaving, I was called by his then attorney, Michael Kramer and informed that if the test wasn't observed by an employee at Defendant Artimes Group then it would not be valid. Again, I returned to the Defendant Artimes Group and this time provided an uneventful, observed urine screen. I was charged again for this drug screen. In later accounts of this drug screen Defendant Onan lies about the contents of Warren Owen's affidavit in regard to my behavior. In the affidavit, Mr. Owen mentions nothing of me being rude or displaying any of the qualities she states in her March 31st, 2015 testimony. Defendant Onan is so daring in her lies that she states to the court that I laid "v-spread" on the bathroom floor, "showing Mr. Owen his anus". There is no mention of anything similar to this in Mr. Owen's affidavit. Kelly Martinez also provides an affidavit about my behavior at their facility citing none of the behavior mentioned by Defendant Onan. Defendant Onan also lies on stand about the contents of that affidavit.

58. After this urine screening, I was invited back to the Artimes Group by Alexandria Carbohol to continue my drug screening.

59. In her court appearance on March 31st, 2015 Defendant Onan states that I was banned from Artimes Group for his behavior. This is all included on the court record purposefully to further the appearance of issues with my behavior. This is all in an effort to promote their own motives of personal and financial gain.

60. Defendant Mckweon lied to me and told me all my contact information was in our minor son's school records. She committed fraud by removing important, legal information from school documents and adding duplicitous accusations into the school's legal forms, forms that are required by law to be maintained accurately on each child in attendance. Defendant Westside Elementary has a duty to both the children at their school and the parents of such children to verify such horrifying accusations and such life changing denial of access.

61. After reviewing the file with the then principal, Mrs. Shandra Harrison both she and I realized the mistake of allowing Defendant Mckweon to enter such an audacious alert with no factual or court backing. The red alert was immediately removed.

62. Defendant Onan was made aware of the attack made by Defendant Mckweon, but refused to comment and refused to even record that it happened in her report. I reported this to Defendant Onan several times and she took no action to better the situation or even question Defendant Mckweon about it. In her later issued report, Defendant Onan goes so far as to completely make up conversations with Mrs. Shandra Harrison. Mrs. Shandra Harrison,

then principal of Defendant Westside Elementary, denies any such conversation taking place between herself and Defendant Onan.

63. Defendant Onan refuses to make mention of anything that might cast a negative light on Defendant Mckweon, much to the cost of the minor son, A.N.

64. Defendant Mckweon with permission of Defendant Onan, not that of the court or Defendant Leonard, denied me Court Ordered Visitation with his minor son on January 27th, 2015. She once again fled her and the child's home with the minor child to keep the child away from me, his father.

65. I called 911 and made a police report of her not having the child available during court ordered times. Defendant Onan again refused to investigate this or include it in her final report.

66. Defendant Onan says in testimony that she used Kelly Martinez to interpret the results of the drug screen. Martinez is a marketing coordinator with Artimes Group, not a drug test expert.

67. After being harassed and relentlessly pursued by Defendant Onan and the deceitful nature of the Defendants Mckweon and O'Neal, I thought it would be prudent to have an independent hair follicle test at an un related national drug testing lab, AnyLabTestNow, at their location on Barrett Parkway in Kennesaw, GA. This test, unsurprisingly, came back negative for all drug use, since I am not a drug user.

68. The passing hair follicle test was also followed up with a passing urine screen voluntarily given by myself at the Cobb County Court House Drug Testing Lab.

69. Defendant Onan, even when presented overwhelming evidence of the absence of drug use, audaciously orders the minor son be environmentally tested for marijuana exposure. The minor son was lied to and forced to go into a laboratory setting and have his finger nails and his hair cut, by a stranger. The testing came back negative of course. These tests were performed by Artimes Group.

70. Throughout these expensive and time consuming unnecessary drug testing procedures, I continually had my life interrupted and disturbed by Defendants Odaniel and Mcrorie.

71. On or around March 20th, 2015 Defendant Mcrorie calls me and informs me that Defendant O'Neal has contacted him as a character witness for me. I explain to Defendant Mcrorie, that given he has no knowledge of me outside a home flood claim that has yet to be resolved, he should not interfere with my custody modification case and that it would unethical for him to provide testimony without any knowledge of the things he is testifying regarding. In this preserved conversation, Defendant Mcrorie begins to threaten me with his intent to return Defendant O'Neal's phone call and provide a negative testimony regarding me and my property that he was paid to represent me on.

72. Distraught and confused, I sought assistance in handling the complications that arose during the custody modification case. I hired Dr. Monty Weinstein to consult with me on the case and to be an expert witness to testify about Defendant McKeon's pattern of alienating

the minor son from the me. Dr. Weinstein was sent five (5) money orders totaling $5000.00 to retain his services and expertise. During initial phone conversations Dr. Weinstein told me of his work.

73. Plaintiffs also were directed by Dr. Weinstein and his assistant, Vicky Taylor that I would need to pay for Dr. Weinstein to stay in Atlanta immediately and would need plane tickets and a hotel room booked to do so. He said it was vital that he have a meeting with the minor son and that he see the Nezbeda family in action. I did as he asked.

74. Dr. Weinstein demanded a 1st class Delta flight be purchased for him to come to town again on March 21st, 2015 to again meet with the family. He again demanded hotel accommodations be provided by myself even though he used this trip for many other cases he was/is currently working on with Defendant Oles.

75. I changed representation from Michael Kramer to Defendant David Oles, under the recommendation of Dr. Monty Weinstein on March 23rd, 2015.

76. On March 25th, 2015 Defendant Mcrorie leaves me a voicemail, which has been preserved, told me that he has in fact returned Defendant O'Neal's phone call. He goes so far to say "Clay (Defendant Odaniel) and I both know, Judge, Bob Leonard (Defendant Leonard), in fact my cousin used to play ball with him at the University of Kentucky back in the 90's". He goes on to state that he will use this influence to affect my custody modification case if he and Defendant Odaniel do not receive their full demanded amount.

77. I informed my attorney Defendant Oles of the extortion being perpetrated by Defendants Odaniel, Mcrorie, and Leonard. Defendant Oles took no action to protect me and

my family after being made aware of the Defendants actions. He even clarified for me that what was happening was extortion, not blackmail.

78. Defendant Mcrorie also contacted Defendant Onan. He provided her with false information about the state of the home he was paid to appraise, the welfare of my pets, and my overall character. Defendant provided false information about monies obtained during the home flood claim. Defendant Onan did not fact check to verify the authenticity of the claims made by Defendant Mcrorie.

79. On March 29th, 2015 I was married in Helen, GA. Defendant Onan went so far as to have an ex-girlfriend contact the me on my wedding day. Defendant Onan used this as just another attack against the Plaintiffs and any privacy in their lives that was left at that point. It is disgusting for a person in her position, one of care taker and guardian of innocent children, to use her power to spoil the sanctity of the new marriage in such a way.

80. During the custody case presided over by Defendant Leonard, he allowed and encouraged Defendants O'Neal and Onan to constantly and illegally invade my privacy by giving unlimited power to consider every single aspect of my life through financial records, travel records, my wife's divorce from her ex-husband, and even her children's parenting plan. Defendant Leonard signed close to a dozen extensions and re-openings of discovery. One such instance was justified by Defendant O'Neal by stating "Mr. Nezbeda could have gone to a liquor store on the day that he had visitation of the minor child and we would be able to ascertain that information by viewing all of his banking and credit card information". This is a gross

violation of my privacy as the only matters at hand were the select few days still disagreed to by myself and Defendant Mckweon.

81. Defendant McRorie was so confident of his pull with Defendant Leonard, he chose to show up to a court hearing on March 31st, 2015. Defendant Oles approached the bench when Defendant Onan started her testimony filled with false information provided by Defendant Mcrorie and possibly Defendant Odaniel. Defendant Onan, for an unknown reason, immediately left the courtroom. Defendant Leonard played a white noise to block the rest of the court, including the court reporter, from hearing anything said in the bench meeting between Defendants Oles, O'Neal, and Leonard. Defendant Oles told me that he played the recording and Defendant Leonard told Defendant Mcrorie to leave the courtroom. Nothing else was mentioned about this incident and no instructions were given about the need to disregard his information and no action was taken against Defendant Mcrorie for using his personal ties with Defendant Leonard to extort, threaten, and injure me.

82. For the rest of the hearing on March 31st, 2015 Defendant Onan continued her attack on me using the statements given by Defendant Mcrorie concerning financials, which he has absolutely no knowledge of, animal abuse and a plethora of other lies manufactured by this enterprise composed of the Defendants listed.

83. On April 1st, 2015 Defendant Oles sent Defendant Onan a letter formally informing her of the conversation that took place during her unexplained leave from court, that took place on March 31st, 2015. Defendant Oles informed Defendant Onan that she was not to use the testimony or any information gained from Defendant Mcrorie. She never responded.

84. Defendant Leonard never reported the use of his name and his office being used to extort and intimidate a constituent by Defendant Mcrorie. He never upheld his oath as either an attorney in the state of Georgia nor did he uphold his oath for holding Judicial office.

85. Defendant Onan, O'Neal, Oles, and Brickey all were privy to felonies being committed, using the stature of power of the office of Superior Court Judge, for felonious acts. They openly admit to their knowledge of the crimes committed against me but all fail their fiduciary responsibilities to me, the state of Georgia, and the United States of America to report these crimes.

86. I, through Defendant Oles, sends Defendant Leonard a sworn affidavit and a cd copy of an audio recording made of Defendant Onan interviewing Plaintiff on April 14th, 2015. This recording exposes several lies told by Defendant Onan in her testimony. This affidavit was never entered into the court record specifically to keep it out of both the public eye and that of any appellant courts that may view this case in the future. During this interview on April 14th, 2015 Defendant Onan questions me on a litany of topics, none of which have anything to do with my parenting skills or qualifications in any form. The questions focus on topics like, Defendant LIC and amounts that have been paid out by them. A gentle reminder here, there are and have been no financial issues on the table. Child support modification was not a topic approved for the Guardian Ad Litem, Defendant Onan. In fact, Defendant Onan had been specifically told to cease any involvement with the home insurance claim with Defendant LIC.

87. Throughout the duration of this, I submitted to voluntary drug screenings at the Cobb County Courthouse Drug Lab. All screens came back negative for any drugs, including marijuana.

88. The next court appearance was on April 22nd, 2015. This was a compliance hearing for drug testing. During this hearing, Defendant Leonard ignored the facts presented in recorded conversations and continued his attack on me. Defendant Onan continue her lies and her inappropriate questioning of me in regard to my home flood claim with Defendant LIC.

89. On May 18th, 2015 I was forced by Defendant Onan to submit to yet another hair follicle test. This test, of course, was also a passing test. Defendant Onan stated that when this hair follicle test came back clean, she would stop her constant harassment and admit that drug use was not a factor in this case. She received a clean hair follicle test and yet continues to claim drug use. Defendant Onan never reported any clean drug screens to the courts. She purposefully leaves the court record totally devoid of any clean drug screen, showing I had no issues with marijuana or alcohol as previously alleged by Defendants Onan, O'Neal, and Mckweon.

90. On May 7th through May 9th Plaintiff I stayed in New York to meet with the esteemed Dr. Robert Palumbo and he had a psychological evaluation performed. I met with Dr. Palumbo and was given a full battery of psychological testing. These results are available and unsurprisingly standard for an anyone in the same demographic as myself and do not include any alarming issues discovered. Defendants Onan and Buchanan both ignore these tests despite

their fiduciary responsibility to do so. They never asked Dr. Palumbo for his opinion of the me
or my mental wellbeing.

91. I basically begged Defendant Onan to keep working on his side of the custody case
she is presiding over as Guardian Ad Litem. I am/was financially unable to pay her outrageous
bill that ended up totaling over $31,000.00. I state clearly, I do not have the financial ability to
pay her bill. Contempt is defined as when someone willingly and knowingly break an order of
the court. I clearly tell Defendant Onan that this is totally unwilling failure to comply with the
order that he must pay half her costs during the court proceedings. She again threatens me
with contempt motion and does indeed file them with the Court the following Monday.
Defendant Onan is a licensed attorney in the State of Georgia. She clearly understands the
definition of contempt and filing these charges when she knows them to be false is perjury. She
knows that contempt is willing. She is blatantly and in plain English states that I have not paid
her willingly and that I had the means to do so.

92. On June 6th, 2015 Defendant Oles and Dr. Weinstein have an apparent "falling out"
over email in regard to Defendant Oles support of Defendant Buchanan. Defendant Oles
represented Dr. Weinstein in a case v. the Georgia State Licensing Board in which Defendant
Buchanan testified against Dr. Weinstein and was defeated by Defendant Oles.

93. On June 16th, 2015 Dr. Weinstein suggested I fire Defendant Oles and hire an
attorney based in New York named Peter L. Lomtevas or an attorney with the last name of
Farmer, whom the I was never able to obtain a first name for from Dr. Weinstein. After
consulting with Mr. Lomtevas and being told by same to send him $1500 to review the case and

decide whether to represent me, I learned that Mr. Lomtevas cannot practice law in the state of Georgia, as clearly stated on his own website.

94. I did not to succumb to the bickering of the conspirators and decided not to fire Defendant Oles.

95. On June 10th, 2015 Dr. Robert Palumbo wrote Defendant Oles a letter stating that he had been retained as an advisor in the custody case and that Defendant Buchanan performing the psychological evaluation ordered by Defendant Leonard, suggested by Defendant Onan, would be highly unethical and a gross mishandling of my concern for Defendant Buchanan's impartiality.

96. On June 17th, 2015 I made an official police report of the extortion by Defendant Mcrorie. The report was made to Officer Skeleton and investigated by Detective Lanigan. Officer Skeleton entered the report as harassing/threatening communications. They listed Defendant McRorie as a suspect.

97. On or around June 25th, 2015 Detective Lanigan states that the Defendant Cobb County Police brought Defendant Mcrorie into the police station for questioning. There is no reason for him not to be charged. The clear recording of Defendant Mcrorie extorting the Plaintiff was given to Defendant Cobb County Police Department. On June 25th, 2015 Detective Lanigan went completely missing and would/will not contact me, no matter what avenues I tried.

98. Dr. Weinstein confirms in email that he and Karen Wagner, an expert in child development and supervision, are disgusted by Defendant Oles' actions of colluding with

someone who had previously stood witness against Dr. Weinstein's credentials and his ability to practice family therapy in the State of Georgia. Dr. Weinstein was even represented by Defendant Oles in the action that Defendant Buchanan took against Dr. Weinstein.

99. Defendant Oles filed a motion for alternate evaluator on July 1st, 2015, yet he failed to serve the Court or the opposing counsel of the filing and he failed to include the expert witness' letter giving even more credence to the claim that his bias did not have to be real, but only had to be perceived by me. This failure on Defendant Oles' part was malicious and intentional. This was done to further delay and drag out the proceedings, damaging me mentally and financially.

100. Defendant Mckweon and Defendant Onan again decide it is time to attack me again and use information about my damaged home, not the residence I was living in at the time, against me. Defendant Onan stated that she received an email from Defendant Mckweon on July 13th, 2015 alerting her to unsafe living conditions within my home. Even though Defendant later calls this an "emergency" she waits until August 12th, 2015 to try and view my home.

101. On August 12th, 2015 I was at the property Defendants claim I was living at, putting a storage rack on my truck to prepare for an upcoming road trip/ belated honeymoon with my wife. While there, Defendant Onan made a surprise visit to the property and demanded access. Defendant Onan was denied access to this property, as it was currently under renovation and she was wearing stiletto heels. This was not the proper attire for a walk of a construction site, as she put it in her "motion for emergency hearing and immediate access to inspect residence

of plaintiff". This was another waste of my time and money as this became yet another cost absorbed by me.

104. After being denied to my private property, which is not where the child nor myself were residing, Defendant Onan filed "motion for emergency hearing and immediate access to inspect residence of plaintiff". In this motion, she tells lies supplied to her by Defendant Mcrorie. She and her fellow Defendants all knew of the trip I was planning and filed the motion while I was literally 39 hours from Cobb County and there was no way to attend the hearing. This was intentional denial of due process and access to the courts. There could have been no emergency pertaining to the home where I resided with my minor son, since I would not be returning for 3 weeks. There was no reason for the hearing to not be delayed.

103. On August 21st, 2015 there was an emergency hearing held in front of Judge Ingram. During this hearing Defendants Onan, O'Neal, and Mckweon continued to lie about the state of living conditions within the MY home. There was a resulting order issued which revoked my right to overnight visitation with his minor son.

104. The court was formally notified of the motion for alternate evaluator on August 26th, 2015.

105. When asked why the motion wasn't properly served to the opposing counsel and the Court, Defendant Oles stated in email format that "cobb county has a habit of doing this to those they see as difficult litigants".

106. When formally notified of the standing motion, Defendant Leonard denied it on September 2nd, 2015.

107. Defendant Oles and Dr. Weinstein apparently corrected their falling out eventually and decided to continue to work together and profit from the determinant and fraudulent "enterprise". I paid, again for flights and hotel accommodations as well as made another $3000.00 payment to Dr. Weinstein as Defendant Oles stated his expert testimony would be vital. The report, the testimony, and all expenditures advised here were for nothing and never even used in court.

108. On October 8th, 2015 Plaintiff I was forced to court to defend myself from contempt charges, stemming from my distrust of Plaintiff Buchanan's ability to stay unbiased given his known negative ties to those closely related to me.

109. I was ordered to pay Defendant Buchanan and additional $2,000.00 before 1:30pm the day of court and make an appointment for the evaluation to be completed. I did make payment and set the appointment.

110. On October 27th, 2015 I was involved in a car accident that resulted in severe injury to my neck and back. This inhibited me from completing the evaluation on the scheduled date.

111. To be present at the December 8th, 2015 compliance hearing, I was forced to miss an appointment with his spinal surgeon Dr. Moore of Marietta, GA. The Defendants were all made aware of the missed doctor's appointment.

112. On December 8th, 2015 I was brought back to court for a compliance hearing on the status of the psychological evaluation to be completed by Defendant Buchanan. This

evaluation had yet to be completed as the injuries I had sustained had prevented me from doing so.

113. On December 8th, 2015 I was incarcerated by Defendant Judge Robert D. Leonard for an indefinite sentence. I was only be released upon Defendant Buchanan completing the psychological evaluation in jail.

114. On December 8th, 2015 I was forced into waiting in a "holding cell" inside the Cobb County Courthouse for over 8 hours while his arrest order was written by Defendant Leonard. I was kept by Defendant Cobb County Sheriff's Office in a holding cell until 4 am on December 9th, 2015 without a place to sit or rest despite a severe neck and back injury that all involved were aware of.

115. My wife was forced to pay Defendant Onan over $6400 immediately into the court registry. She stated openly in court that she wanted it paid into the court registry because I had previously issued her a "bad check". Before court she had already accepted a check from me, but decided, upon talking with Defendant O'Neal, to make things more difficult, by having my wife cancel the previously written check and issue another to the courts registry. She claimed all this confusion was due to the me having written her a "bad check" in the past. This was her error. During her services, I switched banks and asked her to not cash a check I had sent and that I would be bringing her on written on another bank. After verifying she knew that she should not deposit said check, she did so anyway. This was an error on her part, not the mine yet she will try and add anything negative to the court record to keep the appearance of me in a negative light.

116. On December 9th, 2015 My wife was informed by Dr. Buchanan's office that Dr. Buchanan refused to come to the Cobb County Adult Detention center to perform an evaluation until an additional $3000.00 was paid in full. My wife immediately drove to the Alpharetta, GA office of Defendant Buchanan to pay the ransom, so the evaluation could be started and I could be released.

117. On December 9th, 2015 My wife was also informed that Defendant Buchanan might not be available to evaluate me until the following Thursday December 19th, 2015.

118. My wife, through Defendant Coleman contacted Defendant Onan and again asked for her to come inspect the home I was residing in with my minor son, so that when I was released overnight visitation could be regained as it was only taken away because she claimed she had not been allowed to gain access to my current residence. Again, she denied to inspecting the home. She has stated in the past she had not walked the home as she was due money from the me, though now I had no outstanding balance.

119. I was placed in the infirmary of the Defendant Cobb County Adult Detention Center on December 9th, 2015. While in the infirmary I was denied of all regular prescribed medications. This total lack of properly prescribed medication resulted in severe withdrawal symptoms. In the infirmary, I was given Chlordiazepoxide, Clonidine, Gabapentin, Hydroxyzine Pam, Methocarbamol, Phenytoin, and Promethazine. These were prescribed to me by physicians I was never seen by while incarcerated at the Cobb County Adult Detention Center. These medications produced several side effects including pain, chills, diarrhea, loss of bladder control, severe dizziness, loss of memory, slurred speech, dry mouth, confusion, clumsiness,

severe headache, loss of appetite, anxiety, mood changes, and lack of concentration. These side effects were magnified since the medications prescribed are not to be taken at the same time. There is a standard rule of 3 types of Central Nervous System affecting medications. I was placed on 4 different types of medication that affect the central nervous system. This can be very dangerous and does and did produce results of profound confusion, loss of memory, extreme bouts of dizziness, severe diarrhea, loss of ability to concentrate, pain, incontinence, migraines, and profound mood changes. This was all experienced while I was in belly chains and shackles performing a full psychological evaluation for Defendant Buchanan. Dr. Palumbo and other psychologists that have been consulted are disgusted that anyone in their profession would be willing to perform these tests on a subject who is under such extreme duress.

120. During my incarceration, I was a direct witness to several instances to cruelty to prisoners, perpetrated by several employees of the Cobb County Adult Detention Center and the Cobb County Sheriff's Office. These include a handicapped wheel-chair bound prisoner being rammed into a metal post, by a Sheriff's office employee.

121. The obvious mentality of the Cobb County Adult Detention Center's employees is one of total disrespect and disdain for those incarcerated there and the Civil Rights of those people. I filed several formal grievances as to my living conditions. I never received response to any grievance filed. I suspect the grievances may even have simply been thrown away by employees of the Cobb County Adult Detention Center. These grievances were filed between December 10th and December 17th, 2015.

122. On December 11th, 2015 Defendant Buchanan finally showed up to the Cobb County Adult Detention Center to perform the psychological evaluation. The Defendant brought along a man named simply as Brian to help him perform these evaluations. The Defendant Buchanan did not complete the evaluation on this date and stated that he would return the following day to finish up the evaluation and to inform the courts of the completion, so that an order for release could be issued. Defendant did not perform the tests himself as had been explicitly ordered and reaffirmed by the Court.

123. Defendant Buchanan failed to show up the following day to complete the testing, citing issues in obtaining the laptop needed for testing.

124. On December 13th, 2015, the man named Brian returned with the appropriate testing equipment. He me that the answers from the original tests I took were invalid because they were too "normal". I was forced to re-take psychological evaluations given by a person other than the very clearly expressed psychological evaluator, Defendant Buchanan.

125. Defendants failed to have the order for my release until December 18th, 2015. I was wrongfully incarcerated for a total of nine days at the Cobb County Adult Detention Center.

126. During my stay at the Cobb County Adult Detention Center conditions were so deplorable that I lost a total of seventeen pounds. I was denied access to the "store" several times and the was forced to miss all meals served during the 8-12 hour long days spent taking evaluations with Brian and Defendant Buchanan.

127. On January 14th, 2016 I sent a demand letter, Pro Se, to Defendant LIC demanding payment for the home owners claim they bastardized since January 7th, 2014.

128. On March 4th, 2016 I received response from Defendant LIC via their attorney Isenberg & Hewitt. In this response, they conclude that I was correct in some issues, but disagree with others. They go so far as to "tongue and cheek" apologize for one $8,424.00 mistake pointed out in the demand letter sent by myself. In their response letter, they are essentially poking fun at me for my "pro se" written letter.

129. August 8th, 2016 Defendant Onan send me an invoice, via email only, for her "services".

130. August 4th, 2106 Defendant Oles threatens me with lawsuit over outstanding balance.

131. August 15th, 2016 Defendants O'Neal, Onan, Leonard and their spouses all have a bar-b-que dinner together. I was in attendance of the private function.

132. August 16th, 2016 I pick up a copy of the psychological evaluation performed by Dr. Buchanan. I pick this up from Defendant North Point Psychology. Barbara Griffin, secretary for Defendant Buchanan states that she is sorry for not having mailed it sooner, when she mailed copies to Defendants Onan and O'Neal. She says she thinks she mailed it yesterday, but can't remember. This is a psychologist office where people are sent for evaluations and where people go for therapy and counseling. The needs and sensitivities of their clients should be paramount. Mrs. Griffin shows her colors and disdain for those she is supposed to be helping, by respectively using the term "crazy".

133. Ms. Griffin gives me a copy of the invoice for Defendant Buchanan's services. These showed a negative balance of $3000.00. This is the exact amount that my wife was forced to

pay before Defendant Northside Psychology and Defendant Buchanan would perform the psychological evaluation of Plaintiff so I could then be released from Defendant Cobb County Adult Detention Center, where I was being held illegally.

134. On or about August 16th, 2016 I called and spoke with Sargent Dong of the Defendant Cobb County Police Department. During this preserved conversation, Sargent Dong told me there was never any investigation into anyone named Mark McRorie or Reginald Lovelace by any of his detectives, Sargent Dong continues with the pattern of lies, even after I explain I am still in possession of the emails between myself and the detectives discussing the above-mentioned suspects. Sargent Dong tells me during this conversation that there are no records of any of the crimes I had called him to follow up on. Sargent Dong tells me that if I is so sure of the crimes that have been committed and who committed them, then I should go to the Defendant Cobb County Sheriff's Office and take out an arrest warrant myself and have the individuals arrested. I am being not an attorney nor am I an officer of the law. I had/have no knowledge of how to issue an arrest warrant or what such might entail. The purpose of the Defendant Cobb County Police Department is to protect and serve, not to lie and hide facts.

135. August 17th, 2016 Defendants North Point Psychology and Buchanan send me a revised invoice showing no negative balance. It now shows that Defendant Buchanan provided "family therapy" for me. This report is riddled with false statements and lies calculated to cause as much damage as possible to me and my family. Defendant never interviewed anyone who currently has an ongoing relationship with me. Defendant never gave me a drug test. Defendant never gave me an alcohol test. In the court order for Defendant Buchanan to provide the psychological evaluation of me, those are powers expressly given to him. He chose to write

lies about Plaintiff and drug and alcohol abuse, but never test me so that his statements cannot be disproven by fact. The "psychological evaluation" given by Defendant Buchanan was a disgrace to the science and was simply a document forged to benefit all Defendants in the case. This was also Defendant Buchanan's chance to take a swipe at Dr. Weinstein.

136. On or about August 18th, 2016 My wife and I met with Agent Shawn Mullins at the Atlanta branch of the FBI. We waited over an hour for an agent to speak with, as they could not locate their "duty agent". Agent Mullis was shocked to hear the accusations against a judge, took our evidence and made copies, and said someone would be in touch with us. He said this wouldn't be his case as he was assigned to a different task force.

137. August 19th, 2016 I filed "motion to disqualify judge and impeach guardian ad litem" at the Cobb County Courthouse. This motion was properly served on the opposing counsel, Defendant O'Neal, as well as Defendant Onan. They were all aware of the motion prior to their court appearance on August 23rd, 2016.

138. It was also around this time that Defendant Mark McRorie's wife was filing for divorce from him. There is a separate family violence case on Cobb County Courts that identifies him as the Defendant.

139. I filed a complaint with the now defunct Georgia Judicial Qualifications Committee on August 19th, 2016. Please note Defendant Leonard waived his right to confidentiality regarding this JQC complaint.

140. On August 21st, 2016 Defendant Onan refuses to provide her report to the me.

141. On August 22nd, 2016 Defendant O'Neal, Attorney for Defendant Mckweon, refused to provide me with a simple list of potential witnesses and evidence she would present at trial. This is not an uncommon or out of line request to make of the opposing counsel. Defendant's refusal to cooperate with even the simplest request proves once again her true motives are not for the best outcome for her client or the minor child involve, but her motives are literally my ruination. By denying me my right to know who and what I was must disprove during the trial she is taking away my right to a fair trial and due process.

142. August 23rd, 2016 Defendant Onan emailed me a copy of the parenting plan, which was signed into order by Defendant Leonard. This parenting plan is full of contradictions to her own report.

143. On August 26th, 2016 at 11:31 AM Defendant Leonard, through Defendant Brickey sends a threat to me, that if I do not seal his motion for the Judge's disqualification from the public view, he will sue me in the Supreme Court. Defendants gave me less than three (3) hours to do this. I am and was Pro Se and it is an impossibility for a pro se litigant to even learn what is entailed in sealing a motion, much less can accomplish sealing it.

144. I emailed on August 26th, 2016 after the threats from Defendant Leonard, Christie Jones of the Department of Justice victim/witness protection program, and ask for her help as I has still heard nothing back after the meeting with FBI Agent Mullis.

145. August 27th, 2016 is the first day that the court orders cause me to lose visitation with my minor child for lack of a supervisor.

146. August 29th, 2016 Agent Bridgette Brock of the FBI emails me. Agent Brock states she received the information from Agent Mullis and will be investigating the matter.

147. Defendant Mckweon knowing and willfully breaks my right to Privacy by involving his elderly parents in the email conversations she has with me in regard to visitation with their minor son.

148. September 2016 FBI Agent Brock refuses any more information or evidence from me that substantiated my case against the civil conspiracy I am facing.

149. I arrive at my property at 1940 McLain Rd in Acworth, Georgia on August 30th, 2016 to find a notice of tax sale posted in my front yard. There had been no previous warnings issued about the tax sale. Jan Becker of the Defendant Cobb County Tax Commissioners Office admits in preserved conversation that I had in fact not been notified and mailing had been returned undelivered.

150. September 2nd, 2016 Jan Becker of the Cobb County Tax Commissioners Office hangs up on me after screaming that his "HOUSE WILL BE SOLD ON SEPTEMBER 6TH AND THERE IS NOTHING YOU CAN DO ABOUT IT!". In this conversation Becker states, she will inform Carla Jackson, the Cobb County Tax Commissioner about the situation.

151. I sent a complaint to Lynn Reiley at the State Revenue Commission about the mistreatment and underhanded techniques being used by the Cobb County Tax Assessors and Commissioner in their collection practices. After the complaint was received, I received notice that the sale of his property was moved to the December tax sale.

152. My wife and I went to Defendant Westside Elementary School to obtain a copy of my minor son's permanent record. We were illegally stopped from doing so and forced into a meeting with Dr. Dan McGuire and Ashely Bagwell. During this recorded meeting, the I was accused of being threatening, when I remain very calm, despite the inaccuracy of things being told to me by the now principal, Dr. McGuire. This can all be heard on preserved conversation. I was then illegally denied access to my son's school records.

153. After emails to Dr. McGuire, I was finally able to obtain a copy of my son's records on September 14th, 2016. I was forced to cite law for the Defendant Westside Elementary to give me the documents that are legally and morally mine. Dr. McGuire continues to falter as an effective principal when he errantly contacts Defendant Onan for clarification of the Courts Orders.

154. Defendant Onan, is no longer involved in my family as when the case has a final, according to Ga code, she is no longer "working" the case. Her work ceases when the final court hearing is over and once her report has been presented. The final for the court case was August 23rd, 2016 and her report was issued on August 22nd, 2016. Defendant Onan then goes against her own recommendations that I should be spending more time with the minor son at/during school events, and tells the school the court orders mean that the I shall not have access to his minor son at school. The court order even specifically states that I MUST take the minor son to any school related events that occur during my visitation times.

155. September 15th, 2016 FBI Agent Brock emailed me and informed me that my case was being closed and her investigation was over and no charges would be filed.

156. September 16th, 2016 Defendant Mckweon breaks the orders of Defendant Leonard by canceling visitation on her own accord with no input from me or the Court. She also acknowledges that she is continuing to invade my right to privacy by involving third parties.

157. September 22nd, 2016 Defendant Mckweon emails me that she will be leaving the state with our minor son and taking him to Buffalo, NY. At the time, she purchased the plane tickets for this trip I still enjoyed Saturday visitation with my minor son from 10am-6pm every Saturday. Defendant Mckweon was told by her co-conspirators that she would have the minor son after the final court date or she would not have been able to plan such a trip.

158. I emailed my consultant and family therapist, Dr. Monty Weinstein, who introduced me to Defendant Oles. Plaintiff asks for advice and guidance in the case, now that I had lost all time with my son and legal custody. Dr. Weinstein tells me he would only be "on his side if he re-hires him" by sending him another $5,000.00. Dr. Weinstein also refuses to give any information to me about a case he was previously he has been involved with against Defendant O'Neal.

159. Visitation for October 14th, 2016 had to be missed because of lack of supervision. Defendant Mckweon refuses to supervise visitation between the minor son and the myself.

160. I have email conversation with Denise Robinson of Keyence Corporation of America, Plaintiff's former employer. I requested copies of all information requested and given by Defendants O'Neal, Onan, and Mckweon. My right to privacy was obliterated by the disgusting abuse of the subpoena and the Court system. They asked for a ridiculous amount of

useless information for a custody case. I had not worked for this employer for over 4 years at the time of Defendant invading my privacy under the color of law.

161. October 25th, 2016 Defendant Cobb County Sherriff's Department Emails me and states, they do not have the videos of court proceedings and that he requested them from the incorrect organization, but will not give any information as to where those videos may be obtained. I properly filled an open records request with the proper office and it was refused improperly.

162. October 25th, 2016 I send a complaint about this situation to the ACLU and received no reply.

163. On October 28th, 2016 I received an email from Defendant Oles, via his assistant, Dona Webb, threatening me with a suit if I didn't pay him the amount that Defendant Oles says he is owed for his part in my ruination.

164. On November 4th, 2016 I, again, ask Defendant Mckweon to put her petty differences aside and do what is best for our son and allow visitation to take place with her as the supervisor. She again refuses. It is of special note here that the I has never been accused of being violent, abusive, threatening, or anything negative to either the child or Defendant Mckweon. She has no reason to deny these simple pleas from a father trying to see his son.

165. On December 15th, 2016 I received a bill from Defendant Onan, via email for her balance.

166. Defendant Cobb County Tax Assessors office admit their mistake and revise the amount of taxes due for the year of 2015. This was a reduction of over $2,000.00. This money had already been paid to the Cobb County Tax Commissioners Office and had yet to be repaid by them. The estimated a refund may be given sometime in March of 2017.

167. Defendant Mckweon continues to include third parties in her communications with me. This is done with the purpose of destroying my family bonds and relationships. This is a calculated move, used over and over by the "enterprise", to destroy the victim, or me in this case.

168. I is finally able to see his son for the first time since the August 23rd, 2016 court date. My parents could make the 5+ hour long trip from their home in Savannah, GA to supervise the visit. They are in their late 70's and mild health. These trips require two (2) overnight stays away from home for my parents. This is costly and a great inconvenience for them. This visit took place on November 19th, 2016.

169. Unfortunately, I had developed pancreatitis and was hospitalized a day prior. I saw my son for the first time in over 3 months, while admitted to Cobb Wellstar. Defendant Mckweon allowed for no extra time for travel, even though the distance to the hospital essentially reduced the visit down to less than two hours.

170. I was denied access to my son until December 17th, 2016 when my parents were again able to make the trip to supervise a visitation. This was the first time my son was allowed to see his step brothers for over four (4) months.

171. I could obtain the services of a free, faith-based supervision services. The coordinator contacted Defendant Mckweon and she agreed to the visitation services being provided.

172. On or around December 25th, 2016 Defendant Mckweon again made our minor son aware of court orders, by having the child write a note thanking the supervisor for allowing him to see me. She and her husband, Patrick Mckweon, chose to make a spectacle of what is supposed to be a smooth and easy transition from custodial parent to visiting parent. They videotaped and essentially interrogated the supervisor for the visit, while in their driveway with children present.

173. Defendant Mckweon again refuses to allow me visitation time in her front yard with herself, her husband, or anyone she sees fit supervising. Mckweon hints of an issue with the Christmas visitation at this time. I was unaware of any problems with the Christmas Day visit, other than the behavior of the Mckweons, in their driveway.

174. On January 8th, 2017 I contacted Paul Curry of Defendant LIC's special investigative unit. I asked for the police report LIC has on record for the theft claim that I made in July 23rd, 2014. He responded the next day with a police report that included only a stolen lawnmower. This was an over $19,000 claim and they only recorded a lawn mower being stolen.

175. Defendants Mckweon and O'Neal continue their calculated attacks and file an Amended citation of contempt, for my use of a free supervision service, rather than Visits, Inc (which was their suggestion as the coordinator is friends with Defendant Onan).

176. On January 17th, 2017 Defendant Mckweon furthers her attack on me by demanding he submit to a very costly hair follicle drug test within 10 days.

177. Uncoincidentally, Onan emails me in respect to her balance with options to pay by credit card on the same day.

178. Onan continues the pattern of the day for the "enterprise" by emailing me again, threatening me with contempt if I do not pay in full by January 20th, 2017.

179. True to her nature, Onan immediately files contempt charges the very next morning, January 17th, 2017, and chooses not to wait until the 20th as she has stated the prior day.

180. Defendant Leonard, sua sponte, recused himself from my case on March 9th, 2017. He stated in his Order that he was doing so to pursue options against me for my inadvertent inclusion of the Defendant JQC complaint I filed with my motion to recuse him on August 19th, 2016. This was shocking. This was almost eight months after I had correctly asked him to recuse himself from my case. He denied the motion at the time without any regard to the legality of doing so. Now, he states he is exploring his options against me, all AFTER writing the final orders in my custody modification case. There is more than the appearance of impropriety here.

181. On March 10th, 2017 Judge Gregory Poole was randomly assigned to my case. He recused himself on March 15th, 2017 without any reason given.

182. I was able to obtain a supervisor for visitation through the previously used free service and they contacted Defendant Mckweon. She would not allow the use. She, apparently, was so frustrating to the service, that they have declined to work with our family any longer.

183. After the service contacted me to explain to me they would no longer be able to provide my family with their services, I contacted Wagner Consulting. I had previously written to them and set up their services should the need arise. I emailed Defendant Mckeweon of the supervised visit through Wagner consulting and I was met with yet more resistance.

184. Defendant O'Neal sent me an abusive email chain following. She stated in her emails that I would be using Visits, Inc. She acted as if she was the new judge in the case. I replied with the fact that I would not be using their services. I also asked her to cease copying Defendant Onan on email to/from me as she no longer is active on the case and I do not want her adding to her already $32,000.00 plus bill. O'Neal states she is doing so because the case is under appeal. She and I both know that going to appeal does not re-start contracted work with an expert witness, such as Defendant Onan. O'Neal is violating my privacy by including unrelated third parties to our communications.

185. On March 17th, 2017 Judge Ingram was randomly assigned to my case.

186. I filed on April 5th, 2017 a motion to stay in the case pending the sitting motion to vacate orders, filed on the same day, and the appeal, that was filed in November of 2016.

187. Defendant Onan contacted me via email and said that I should have Wagner Consulting contact her to complete her GAL paperwork. She was done working on this case when the final trial and her final report were complete. That was August 23rd, 2016. Any

continued involvement is nothing more than her harassment of me and my family. I informed her I would do nothing of the sorts. I informed Defendant Onan that I could not waste any more time defending her harassment and I needed to plan a birthday party for my son. She continued, what I presumed due to her misspellings and grammatical errors along with her apparent forgetting of our previous communications via these email addresses, to harass me until 9:40 pm on St. Patrick's Day spewing venom at me. I also suspect alcohol was to play in Defendant Onan's email that evening as she has countless photographs of herself online, viewable by anyone, including the children she is supposed to protect in her role as guardian ad litem, drunk with glasses of alcohol in her hand in very nearly every single picture taken of her. The same attitude to public drunkenness can be applied to Defendant Leonard and his wife.

188. On March 18th, 2017 I enjoyed visitation time with my son with Wagner Consulting services. There were no issues to follow.

189. On March 20th, 2017 Defendants Leonard and JQC filed a joint motion to seal my eight-month old motion to disqualify him.

190. On or around March 15th, 2017 I became aware of my name being used in the Waffle House Sex Scandal case. This is not what I want my name known for. I am simply trying to be a good father. The motion to remove Defendant Leonard and its attached affidavit were used in another litigant's motion to remove Defendant Leonard. This revelation made things even more clear to me. The Defendant JQC did a sub-par investigation into the abuses I complained about. I had no redress for this issue or reason for their failure to stand by their fiduciary duties to properly investigate my claims. In the motion to recuse in Rogers v. Brindle,

David Cohen reveals that a top committee member and investigator for the JQC was currently working with the opposing counsel in his matter. Defendant Leonard seems to be giving Rogers and his attorneys a much easier go, in his court room than either myself of Ms. Brindle have received. To me and to any reasonable person it appears Defendant Leonard has a habit of allowing personal friendships and other relationships interfere with his impartiality. It also seems that Defendant JQC is fraudulently investigation and concluding complaints made against.

FURTHER AFFIANT SAYETH NOT.

Respectfully this 7th day of April 2017

David Andrew Nezbeda

Subscribed and sworn to me, this _____ day of April 2017

Signature of Notary

MARLENE JONES
Notary Public - State of Georgia
Paulding County
My Commission Expires Aug 5, 2020

Marlene Jones

Name of Notary        My commission expires: __8-5-20__